IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BEST PROCESS SOLUTIONS, INC.<br>1071 Industrial Pkwy N.<br>Brunswick, OH 44212<br><br>        Plaintiff,<br><br>   -vs.-<br><br>BLUE PHOENIX INASHCO USA, INC.<br>c/o The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801<br><br>        Defendant. | CASE NO.: 1:21-cv-662<br><br>JUDGE<br><br>**COMPLAINT**<br><br>**Jury Demand Endorsed Herein** |

Plaintiff Best Process Solutions, Inc. ("BPS"), by its undersigned attorneys, for its complaint against Defendant Blue Phoenix Inashco USA, Inc. ("Inashco") alleges as follows:

### THE PARTIES

1. BPS is a corporation organized and existing under the laws of the State of Ohio, having its principal place of business at 1071 Industrial Pkwy N., Brunswick, OH 44212.

2. Defendant Inashco is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 111 Cathedral St., Ste. 303, Annapolis, MD 21401-2740.

**JURISDICTION AND VENUE**

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as the amount in controversy exceeds the sum of $75,000, and the action is between citizens of different states.

4. This Court has personal jurisdiction over Inashco by virtue of Inashco's solicitation of business within the State of Ohio, within this judicial district and elsewhere.

5. Moreover, this Court has personal jurisdiction over Inashco because the contract at issue provides that BPS may institute legal proceedings in any relevant territory.

6. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391(b), and/or (c), and 28 U.S.C. § 1400(b) because a substantial part of the events giving rise to the claims occurred in this judicial district and because Inashco is subject to personal jurisdiction in this District.

**OPERATIVE FACTS**

7. BPS is a manufacturer of bulk processing equipment and recycling equipment systems.

8. One of BPS's state of the art recycling equipment systems is the RecoverMax Fines Process. This process allows for the recovery of metal pieces down to the millimeter from incinerator bottom ash and auto shredder residue, including copper, silver, gold, and other precious metals that can be reused in other applications.

9. BPS's machine and process for the RecoverMax Fines Process has been recognized as innovative by the United States Patent and Trademark Office and has been awarded at least one patent with other patents currently pending.

10. Inashco is the North American arm of a Netherlands company that processes incinerator bottom ash from power stations to recover low grade metals to be further processed to separate the metals from the waste components.

11. The major part of Inashco's process involves recovering low grade metals from the waste, including aluminum, copper, silver and gold, that can be further processed.

12. In July, 2016, Inashco became interested in BPS's RecoverMax process which allowed their low grade metals to be further into high grade metals, after a phone call between Tim Conway, BPS's Principal and CEO, and Joost Böggemann, Vice President of Development North America for Inashco.

13. On July 15, 2016, two representatives from Inashco, Joost Böggemann and Medwin Croes, visited BPS's facility in Brunswick, Ohio to test the RecoverMax process.

14. Excited about the results of the test, Inashco began to set up additional testing that would include having Inashco engineers at BPS's Brunswick facility.

15. At this time, BPS and Inashco also started to discuss a Mutual Non-Disclosure Agreement ("NDA") to continue business discussions and the testing process.

16. On August 2, 2016, Inashco's president, John Joyner, signed the NDA with BPS. A true and accurate copy of the NDA is attached as Exhibit 1.

17. The NDA defined Confidential Information to include: "proprietary information concerning the components, construction, and processes of BPS's RecoverMax technology used for crushing the mineral components of a non-ferrous metal concentrate as derived from municipal solid waste ash by means of [Inashco's] process."  (NDA, pg. 1.)

18. Further, Confidential Information also included:

> all information whether or not it is labeled as confidential and whether it is disclosed before, on or after the date of this Agreement that shall be disclosed to the Recipient in connection with the Potential Transaction regarding the

>Disclosing Party or its customers, suppliers or strategic partners, or the business, operations, finances, technologies, services or products of the Disclosing Party or its customers, suppliers or strategic partners, including without limitation: any commercial, financial or technical information regarding technologies, know-how, inventions (whether or not patented or patentable, and whether or not in operation), techniques, development, processes, specifications, trade secrets; products and product designs; formula information; customers base(s) and sourcing information; marketing, business plans and activities, business opportunities, contracts; names of suppliers, customers, strategic partners, sources, costs; projections and results; all communications between the Parties; and all other private, confidential and/or proprietary information relating to the Disclosing Party or its customers, suppliers or strategic partners or its potential customers, suppliers or strategic partners or their respective businesses, whether disclosed in writing, orally, by electronic mail, in graphic format or by inspection of tangible objects (including without limitation documents, prototypes and samples, and including summaries and other compilations prepared by the Recipient using Confidential Information).

(NDA, pgs. 1-2.)

19. The use of Confidential Information was limited to the purposes agreed to between the Parties and to determine whether the Parties would enter into a transaction, whereby BPS would sell RecoverMax units and/or systems and the related exclusive rights for processing ash from municipal waste-to-energy facilities. (NDA, pg. 2)

20. If there was a breach of the NDA, the parties agreed that injunctive relief would be an appropriate remedy, but not the exclusive remedy, and no bond or other security would be required to obtain such injunctive relief. (NDA, pg. 3.)

21. Finally, the NDA included an attorney fees shifting clause that awarded a prevailing party costs and expenses, including attorney and expert fees, incurred in any legal proceeding from the non-prevailing party. (NDA, pg. 3.)

22. On August 3, 2016, BPS ran a second test at the Brunswick facility that was witnessed by Inashco's engineers.

23. At the end of August, 2016, BPS delivered a proposed process flow diagram for a plant design to Inashco.

24. On August 29, 2016, Inashco requested to enter into a Non-Binding Letter of Intent to purchase and license use of BPS's RecoverMax technology in the United States, Europe, and Asia.

25. The Letter of Intent recognized that the NDA was to remain in full force and effect and remained binding on both Inashco and its parent company.

26. At the end of September, BPS provided Inashco with a more detailed proposal for an Ash Metal Processing facility and proposed process flow.

27. Inashco schedule additional testing at the Brunswick facility for November 10, 2016.

28. In November, and December, 2016, BPS and Inashco exchanged proposed terms for a final agreement to use BPS's technology in Inashco plants.

29. On January 4, 2017, BPS and Inashco executed the RecoverMax Purchase Agreement. A true and accurate copy of the RecoverMax Purchase Agreement is attached as Exhibit 2.

30. The agreement set forth the terms and conditions for Inashco's purchase of the RecoverMax system and specifically set forth the license fees for the use of the technology at $4 per tonnage in the United States and Asia Regions and $3 per tonnage in the European Region. (RecoverMax Purchase Agreement, pgs. 4-6.)

31. Additionally, the agreement granted Inashco exclusive use of the technology in certain geographic areas for an additional fee. The exclusive areas included Florida and Minnesota in the United States, various European countries, and various Asian and Middle Eastern countries. (RecoverMax Purchase Agreement, pgs. 8-9.)

32. Finally, the agreement recognized and reaffirmed the prior NDA agreement between the parties. (RecoverMax Purchase Agreement, pg. 19.)

33. In March, 2017, after the agreement was executed, BPS allowed Inashco's Engineers to see the internal configuration of the RecoverMax machine.

34. Soon after the engineers reviewed the internal structure of the machine, Inashco began to question the similarities between BPS's RecoverMax machine and similar technology manufactured by Palla Mill.

35. In repeated back and forth communications between BPS and Inashco, BPS explained how the RecoverMax system, while similar to the Palla Mill technology in some respects, was crafted specifically to achieve the recovery of metals from friable materials, *i.e.,* glass, rock and other minerals.

36. During these communications, BPS repeatedly noted that this information was subject to the NDA as it involved proprietary information regarding the RecoverMax system and process.

37. On May 11, 2017, Inashco issued a purchase order for the first RecoverMax system to be installed in its Putnam, Connecticut facility.

38. A few months later, BPS provided another quotation for the installation of a RecoverMax system at a facility to be located in Richmond, Virginia.

39. During this time, BPS and Inashco continued to meet to discuss the use of the RecoverMax system in other plants in the United States, Europe, and Asia.

40. In November, 2017, BPS provided another application for the use of the RecoverMax system in a facility in Lancaster, Pennsylvania, including a specification for the system.

41. BPS received an order for the RecoverMax system for Lancaster from Inashco on January 30, 2018.

42. In July 20, 2018, BPS began the installation of the RecoverMax system in Putnam, Connecticut.

43. Almost immediately after installation, Inashco raised issues with the performance of the RecoverMax system and the amount of tonnage per hour it could handle.

44. BPS attempted to address these issues, explaining that the RecoverMax system would need to be reconfigured to reach the same results it achieved in testing in the reduced design parameters of the Putnam facility, but noted that it was willing to make these changes to Inashco's satisfaction or would remove the system and provide Inashco with a complete refund.

45. Despite BPS's efforts to resolve these issues, Inashco put BPS on notice that it was in breach of the RecoverMax Purchase Agreement.

46. While BPS and Inashco were communicating back and forth regarding the alleged breach, Inashco contacted one of the BPS's suppliers to quote a dust control system for the Lancaster, Pennsylvania facility.

47. On January 25, 2019, Inashco provided BPS with a proposed Mutual Release and Termination Agreement and the parties began to negotiate the termination of the RecoverMax Agreement.

48. During these negotiations, Inashco imported a Palla Mill system to the United States on August 25, 2019.

49. One month later, on September 25, 2019, BPS and Inashco executed a Mutual Release and Termination Agreement. A true and accurate copy of the Mutual Release and Termination Agreement is attached as Exhibit 3.

50. The Mutual Release and Termination Agreement provided for the termination of the RecoverMax Agreement, BPS's removal of the RecoverMax System from the Putnam facility, a refund to Inashco for the Putnam RecoverMax System, cancellation of pending purchase orders and refund of amounts paid, and a broad mutual release between the parties.

51. Notably, the Mutual Release and Termination Agreement specifically provided that the prior NDA between Inashco and BPS would survive the termination of the RecoverMax Agreement and shall continue until August 3, 2031 unless terminated earlier in writing by both Parties. (Mutual Release and Termination Agreement, pg. 2.)

52. Further, the mutual release provision of the Mutual Release and Termination Agreement specifically noted that "nothing in this Agreement shall be construed to release the Parties from any obligation or term arising under this Agreement or the NDA or shall serve in any way as a waiver of or release of any rights relating to intellectual property protections or intellectual property rights of BPS." (Mutual Release and Termination Agreement, pgs. 4-5.)

53. On December 20, 2020, Inashco imported a second Palla Mill system to the United States.

54. Based on the importation of the Palla Mill systems, Inashco is using information and technology gleaned from BPS through the exchange of information under the NDA to accomplish the same results as the RecoverMax system using the Palla Mill system and additional components from the same vendors used by BPS.

FIRST CLAIM FOR RELIEF
(Breach of Contract)

55. BPS incorporates by reference the allegations of paragraphs 1 through 54 of this Complaint as if specifically set forth herein.

56. The NDA executed by both Inashco and BPS limited Inashco's use of any confidential and proprietary information and technology provided by BPS to enter into a possible transaction between the two parties.

57. As a result, Inashco was expressly prevented from using any of the information and technology for any other purpose that was unrelated to the possible transaction with BPS.

58. The Mutual Release and Termination Agreement executed by the parties specifically reaffirms and recognizes the continuation of the NDA beyond the termination of the RecoverMax Purchase Agreement.

59. Inashco materially breached the NDA by using confidential information obtained from BPS to modify a Palla Mill machine to accomplish the same result as BPS's RecoverMax system.

60. Inashco further breached the NDA by contacting and ordering parts from BPS's suppliers to duplicate the BPS system.

61. BPS has suffered financial damages as a result of Inashco's breach including, but not limited to, the loss of the projected future work with Inashco, the loss of future license and exclusivity fees, and the unfair competition resulting from Inashco's modification of a competitor's products.

62. As a direct and proximate result of Inashco's breach of contract, BPS has been damaged in an amount greater than $50 million, to be determined at trial.

SECOND CLAIM FOR RELIEF
(Misappropriate of Trade Secrets)

63. BPS incorporates by reference the allegations of paragraphs 1 through 62 of this Complaint as if specifically set forth herein.

64. The internal workings of BPS's RecoverMax system, the components necessary to install the system in a facility, and the vendors who supply such components are trade secrets.

65. In forming a mutual business relationship with Inashco, BPS disclosed these trade secrets to Inashco with the assurance that such information would be kept confidential.

66. Inashco has used these trade secrets to create a system that performs essentially the same function as BPS's RecoverMax system without having to compensate BPS.

67. Inashco's use of BPS's trade secret information in this manner was not authorized by BPS.

68. BPS has suffered financial damages as a result of Inashco's improper use of its trade secrets including, but not limited to, the loss of the projected future work with Inashco, the loss of future license and exclusivity fees, and the unfair competition resulting from Inashco's modification of a competitor's products.

69. As a direct and proximate result of Inashco's misappropriate of BPS's trade secrets, BPS has been damages in an amount greater than $50 million, to be determined at trial.

### THIRD CLAIM FOR RELIEF
(Unjust Enrichment)

70. BPS incorporates by reference the allegations of paragraphs 1 through 69 of this Complaint as if specifically set forth herein.

71. When BPS shared its confidential and proprietary information regarding its RecoverMax system, it conferred a benefit on Inashco.

72. Inashco knew that BPS's confidential and proprietary information was beneficial to it.

73. Inashco has retained the benefit of this information without proper compensation to BPS.

74. BPS has been substantially harmed by Inashco's retention of the information as it allows Inashco and other companies to unfairly compete in the marketplace.

75. As a direct and proximate result of Inashco's unjust enrichment, BPS has been damaged in an amount greater than $75,000, to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, BPS prays that this Court enter an Order:

1. Entering judgment for BPS on its Complaint;

2. Awarding BPS all of its actual and consequential damages due to Inashco's breach of the Non-Disclosure Agreement;

3. Awarding BPS all of its actual and consequential damages due to Inashco's misappropriation of its trade secrets;

4. Awarding BPS compensation for the benefit conferred on Inashco by the sharing of confidential and proprietary information;

5. Entering a permanent injunction against Inashco that will prevent Inashco, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them from using any of BPS's Confidential Information, as defined by the Non-Disclosure Agreement, and continuing to use any of system or machine built using BPS's Confidential Information in the future;

6. Awarding BPS all costs and expenses associated with bringing this action, including, but not limited to, attorneys' fees and expert witness fees; and

7. Awarding such other further legal and equitable relief as the Court deems just and reasonable.

          Respectfully submitted,

          /s/Anastasia J. Wade
          Christopher J. Carney (0037597)
          Michael P. O'Donnell (078390)
          Anastasia J. Wade (0082797)
          BROUSE MCDOWELL
          600 Superior Avenue East, Suite 1600
          Cleveland, Ohio 44114
          Telephone: (216) 830-6830
          Facsimile: (216) 830-6807
          E-mail: ccarney@brouse.com
                   modonnell@brouse.com
                   awade@brouse.com

          *Counsel for Plaintiff Best Process Solutions, Inc.*

## **JURY DEMAND**

Plaintiff requests a trial by jury on all issues and claims so triable.

          /s/ Anastasia J. Wade