## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

Best Process Solutions, Inc.,

Case No. 1:21cv662

Plaintiff,

-vs-

JUDGE PAMELA A. BARKER

Blue Phoenix Inashco USA, Inc.,

MEMORANDUM OPINION & ORDER

Defendant

Currently pending is Defendant Blue Phoenix Inashco USA, Inc.'s Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. No. 5.)  Plaintiff Best Process Solutions, Inc. filed a Brief in Opposition on May 24, 2021, to which Defendant responded on June 7, 2021.  (Doc. No. 11, 12.) For the following reasons, Defendant's Motion (Doc. No. 5) is GRANTED IN PART and DENIED IN PART.

I.      Background

    A.      Factual Allegations

The following factual allegations are set forth in the Complaint.  Plaintiff Best Process Solutions, Inc.  (hereinafter "Plaintiff" or "BPS") manufactures a recycling equipment system called the RecoverMax Fines Process.  (Doc. No. 1 at ¶ 8.)  This process allows for the recovery of metal pieces from incinerator bottom ash and auto shredder residue, including copper, silver, gold, and other precious metals.  (*Id.*)

Defendant Blue Phoenix Inashco USA, Inc. (hereinafter "Defendant" or "Inashco") is the North American arm of a Netherlands company that processes incinerator bottom ash from power stations to recover low grade metals to be further processed to separate the metals from the waste

components.  (*Id.* at ¶ 10.)   In July 2016, Inashco became interested in BPS' RecoverMax Process.

(*Id.* at ¶ 13.)   Two representatives from Inashco visited BPS's facility in Brunswick, Ohio to test the

RecoverMax process and, shortly thereafter, set up additional testing that would include having

Inashco engineers at BPS's facility.  (*Id.*)

In anticipation of continued business discussions and the testing process, BPS and Inashco

executed a Mutual Non-Disclosure Agreement ("NDA") in August 2016, which is attached to the

Complaint as Exhibit 1.  (Doc. No. 1-1.)  The NDA defines "Confidential Information" as follows:

> The confidential information to be disclosed under this Agreement ("Confidential
> Information") includes proprietary information concerning the components,
> construction and processes of BPS's RecoverMax technology used for crushing the
> mineral components of a non-ferrous metal concentrate as derived from municipal
> solid waste ash by means of [Inashco's] process.
>
> Confidential Information also includes all information, whether or not it is labeled as
> confidential, and whether it is disclosed before, on or after the date of this Agreement,
> that shall be disclosed to the Recipient in connection with the Potential Transaction
> regarding the Disclosing Party or its customers, suppliers or strategic partners, or the
> business, operations, finances, technologies, services or products of the Disclosing
> Party or its customers, suppliers or strategic partners, including without limitation:
> any commercial, financial or technical information; information regarding
> technologies, know-how, inventions (whether or not patented or patentable, and
> whether or not in operation), techniques, developments, processes, specifications,
> trade secrets; products and product designs; formula information; customer base(s)
> and sourcing information; marketing, business plans and activities, business
> opportunities, contracts; names of suppliers, customers, strategic partners, sources,
> costs; projections and results; all communications between the Parties; and all other
> private, confidential and/or proprietary information  relating to the Disclosing Party
> or its customers, suppliers or strategic partners or its potential customers, suppliers or
> strategic partners or their respective businesses, whether disclosed  in writing, orally,
> by electronic mail, in graphic format or by inspection of tangible objects (including
> without limitation documents,  prototypes and samples, and including summaries and
> other compilations prepared by the Recipient using Confidential Information).

(*Id*. at Section 1.) The NDA further provides that Inashco "shall maintain the Confidential

Information in strict and absolute confidence at all times" and "shall use [it] only for the purposes

agreed to between the Parties and for the purpose of determining whether the Parties wish to enter into the Potential Transaction."[1]  (*Id.* at Sections 2 and 3.)  It also contains a choice of law provision that "[t]his Agreement is made under and shall be construed according to the laws of the State of Maryland, without regard to principles of conflicts of law."  (*Id.* at Section 10.4.)

BPS and Inashco continued testing and negotiations and, on January 4, 2017, executed the RecoverMax Purchase Agreement, which is attached to the Complaint as Exhibit 2.  (Doc. No. 1-2.) The Purchase Agreement sets forth the terms and conditions for Inashco's purchase of the RecoverMax system, including the license fees for the use of the technology.  (*Id*. at pp. 4-6.)  The Purchase Agreement also grants Inashco exclusive use of the technology in certain geographic areas for an additional fee.  (*Id*. at pp. 6, 8-9.)  Notably, the Purchase Agreement expressly provides that "BPS and [Inashco] have entered into a Non-Disclosure Agreement that is incorporated by reference in this Agreement."  (*Id*. at Section 16.1.)  Unlike the NDA, however, the Purchase Agreement identifies Ohio (rather than Maryland) law as the governing law.[2]  (*Id*. at Section 16.3.)

In March 2017, after the agreement was executed, BPS allowed Inashco's engineers to see the internal configuration of the RecoverMax machine.  (Doc. No. 1 at ¶ 33.)  Soon afterwards,

---

[1] Section 4 of the NDA imposes certain exceptions to the restrictions on use and disclosure of Confidential information, as follows: "This Agreement imposes no obligation upon a Recipient with respect to any Confidential Information to the extent that the Confidential  Information:  (a) was possessed by the Recipient prior to its receipt from the Disclosing Party; (b) is or becomes a matter of public knowledge through no fault of the Recipient; (c) is rightfully received by the Recipient from a third party not owing a duty of confidentiality to the Disclosing Party; (d) is disclosed to the Recipient by, or with the authorization of, the Disclosing Party; (e) is independently developed by the Recipient without any use of the Disclosing Party's Confidential Information; or (f) is required to be disclosed by the Recipient pursuant to an order of a court of competent jurisdiction, by applicable law or regulation, or by valid subpoena or similar process, provided that the Recipient shall provide the Disclosing Party with adequate prior written notice of such legal requirement and, to the extent possible, with the opportunity to oppose the disclosure or obtain a protective order." (*Id*. at Section 4.)

[2] Specifically, the Purchase Agreement provides that: "This Agreement, and each Purchase Order issued pursuant to this Agreement, shall be governed by and construed in accordance with the internal laws of the State of Ohio without giving effect to any choice or conflict of law provision or rule (whether of the State of Ohio or any other jurisdiction)." (*Id*.)

3

Inashco began to question the similarities between BPS's RecoverMax machine and similar technology manufactured by another company, known as the Palla Mill. (*Id*. at ¶ 34.) BPS "explained how the RecoverMax system, while similar to the Palla Mill technology in some respects, was crafted specifically to achieve the recovery of metals from friable materials, i.e., glass, rock and other minerals." (*Id*. at ¶ 35.) During these communications, BPS "repeatedly noted that this information was subject to the NDA as it involved proprietary information regarding the RecoverMax systems and process." (*Id*. at ¶ 36.)

Apparently reassured, Inashco issued a purchase order on May 11, 2017 for the first RecoverMax system to be installed in its Putnam, Connecticut facility. (*Id*. at ¶ 37.) BPS also provided quotations for installations of the RecoverMax system at other Inashco facilities, including those located in Richmond, Virginia and Lancaster, Pennsylvania. (*Id.* at ¶¶ 38, 40.) In January 2018, BPS received an order for the RecoverMax system for Inashco's Lancaster facility. (*Id*. at ¶ 41.)

In July 2018, BPS began installing the system in the Putnam, Connecticut facility. (*Id*. at ¶ 42.) Almost immediately after installation, Inashco raised concerns regarding the performance of the RecoverMax system and the amount of tonnage per hour it could handle. (*Id.* at ¶ 43.) According to BPS, it "attempted to address these issues, explaining that the RecoverMax system would need to be reconfigured to reach the same results it achieved in testing in the reduced design parameters of the Putnam facility, but noted that it was willing to make these changes to Inashco's satisfaction or would remove the system and provide Inashco with a complete refund." (*Id*. at ¶ 44.)

Inashco was not satisfied and put BPS on notice that it was in breach of the Purchase Agreement. (*Id.* at ¶ 45.) In January 2019, the parties began negotiating the terms of a proposed

Mutual Release and Termination Agreement.  (*Id.* at ¶ 47.)  At some point during the parties' communications regarding BPS's alleged breach, "Inashco contacted one of BPS's suppliers to quote a dust control system for the Lancaster, Pennsylvania facility."  (*Id.* at ¶ 46.)  In August 2019, Inashco imported a Palla Mill system to the United States.  (*Id.* at ¶ 48.)  Inashco imported a second Palla Mill system the following year, in December 2020.  (*Id.* at ¶ 53.)

Meanwhile, on September 25, 2019, BPS and Inashco executed the Mutual Release and Termination Agreement (hereinafter "Termination Agreement"), which is attached to the Complaint as Exhibit 3.  (Doc. No. 1-3.)  The Termination Agreement provides for (1) the termination of the Purchase Agreement; (2) BPS's removal of the RecoverMax System from the Putnam facility; (3) a refund to Inashco for the Putnam RecoverMax System in the amount of $351,835.00; (4) cancellation of pending purchase orders and refund of amounts paid; and (5) a broad mutual release between the parties.  (*Id.*)  Of particular relevance herein, the Termination Agreement specifically provides that the prior NDA between Inashco and BPS would survive the termination of the Purchase Agreement and shall continue until August 3, 2031 unless terminated earlier in writing by both Parties.  (*Id.* at Section 1.2.)  Further, the mutual release provision of the Termination Agreement notes that "nothing in this Agreement shall be construed to release the Parties from any obligation or term arising under this Agreement or the NDA or shall serve in any way as a waiver of or release of any rights relating to intellectual property protections or intellectual property rights of BPS."[3]  (*Id.* at Section 4.1.)

BPS alleges that "[b]ased on the importation of the Palla Mill systems [in August 2019 and December 2020], Inashco is using information and technology gleaned from BPS through the

---

[3] The Termination Agreement identifies yet another State's law as the governing law, providing that it "shall be governed by the laws of the State of Delaware without reference to the principles of conflicts of law."  (*Id.* at Section 5.2)

exchange of information under the NDA to accomplish the same results as the RecoverMax system using the Palla Mill system and additional components from the same vendors used by BPS." (*Id*. at ¶ 54.)

### B.    Procedural History

On March 24, 2021, BPS filed a Complaint in this Court against Inashco raising claims for breach of contract, misappropriation of trade secrets, and unjust enrichment.  (Doc. No. 1.)  BPS seeks actual and consequential damages "in an amount greater than $50 million," as well as a permanent injunction, attorneys' fees, expert witness fees, and costs.  (*Id*.)

On April 23, 2021, Inashco filed a Motion to Dismiss each of BPS' claims pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. No. 5.)  BPS filed a Brief in Opposition on May 24, 2021, to which Inashco replied on June 7, 2021.  (Doc. Nos. 11, 12.)

## II.    Standard of Review

Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff.  *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate*

6

*Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly*, 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679.

## III.   Analysis

### A.   Breach of Contract Claim (Count I)

In Count One, BPS alleges that the NDA that was executed by both Inashco and BPS (and reaffirmed in the Termination Agreement) "limited Inashco's use of any confidential and proprietary information and technology provided by BPS to enter into a possible transaction between the two parties." (Doc. No. 1 at ¶ 56.) BPS alleges that, "[a]s a result, Inashco was expressly prevented from using any of the information and technology for any other purpose that was unrelated to the possible transaction with BPS." (*Id*. at ¶ 57.) BPS claims that:

59.  Inashco materially breached the NDA by using confidential information obtained from BPS to modify a Palla Mill machine to accomplish the same result as BPS's RecoverMax system.

60.  Inashco further breached the NDA by contacting and ordering parts from BPS's suppliers to duplicate the BPS system.

(*Id*. at ¶¶ 59, 60.) BPS alleges that it has suffered damages as a result of Inashco's breach, including the loss of future work with Inashco, the loss of future license and exclusivity fees, and "the unfair competition resulting from Inashco's [alleged] modification of a competitor's products." (*Id.* at ¶ 61.)

Inashco argues that BPS's breach of contract claim should be dismissed because the Complaint fails to allege sufficient facts to state a plausible claim for relief. (Doc. No. 5 at pp. 9-13.) Inashco first asserts that BPS failed to allege facts showing the existence of any "confidential information" that was allegedly misused by Inahsco. (*Id*.) Specifically, Inashco argues that BPS "does not identify what information it is talking about [in this claim], it does not explain how such unidentified information constitutes Confidential Information under the NDA, and it does not point to any particular obligation of the NDA when it says . . . that contract was breached." (*Id*. at p. 11.) Inashco further argues that BPS's claim fails because it has failed to allege any facts showing that modifying the Palla Mill system and/or ordering parts from one of BPS's suppliers gives rise to a plausible claim that Inasho breached the NDA. (*Id*.) Finally, Inashco asserts that, even if BPS had sufficiently alleged that Inashco used BPS's confidential information, BPS's claim fails because the Complaint fails to allege any facts showing that such information is not subject to one of the exceptions set forth in Section 4 of the NDA, i.e., allegations that the confidential information was not possessed by Inashco prior to BPS's disclosure of it, was not a matter of public knowledge, was

8

not rightfully received by Inashco from a third party, and/or was not disclosed to Inashco by BPS or someone authorized by BPS.  (*Id.* at pp. 12-13.)

BPS asserts that it sufficiently alleged that Inashco breached the NDA when it ordered a component from one of BPS's suppliers because the NDA provides that the names of BPS's suppliers and the components used in the RecoverMax system are considered confidential information.  (Doc. No. 11 at p. 7.)  Second, BPS notes that Inashco imported two Palla Mill systems into the United States and argues that "the Palla Mill system would have to be altered using certain components and set-ups disclosed by BPS under the NDA to recover metals from friable materials."  (*Id.*)  BPS maintains that "[b]ased on Inashco's purchase of the Palla Mill system and the same components from BPS suppliers used to reconfigure the technology of the Palla Mill to recover precious metals, Inashco is breaching the NDA by using BPS's information to modify the Palla Mill to accomplish the same results."  (*Id.*)  Finally, BPS argues that it need not allege any facts relating to Section 4 of the NDA because it is not required, at the pleading stage, to address "every potential defense Inashco may raise in response to the Complaint." (*Id.* at pp. 8-9.)

In reply, Inashco asserts that BPS's breach of contract claim is based on "sheer speculation rather than 'detailed allegations'" and, thus, is subject to dismissal.  (Doc. No. 12 at p. 4.)

The parties appear to agree, for purposes of the instant Motion, that Maryland law applies to BPS's breach of contract claim.  Under Maryland law, the elements of a claim for breach of contract are "'contractual obligation, breach, and damages.'" *Transamerica Premier Life Ins. Co. v. Selman & Company*, 401 F. Supp. 3d 576, 596 (D. Md. 2019) (quoting *Tucker v. Specialized Loan Servicing, LLC*, 83 F.Supp.3d 635, 655 (D. Md. 2015)) (quoting *Kumar v. Dhanda*, 198 Md. App. 337, 17 A.3d 744, 749 (2011)).  "Maryland law requires that a plaintiff alleging a breach of contract 'must of

9

necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *Polek v. J.P. Morgan Chase Bank, N.A.,* 424 Md. 333, 362, 36 A.3d 399, 416 (2012) (quoting *Cont'l Masonry Co v. Verdel Constr. Co.*, 279 Md. 476, 480, 369 A.2d. 566, 569 (1977)) (emphasis in original). *See also RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 658, 994 A.2d 430, 442 (2010); *Transamerica Premier Life Ins. Co.,* 401 F.Supp.3d at 596.

For the following reasons, the Court finds that BPS has sufficiently alleged a plausible claim for breach of contract.  In the Complaint, BPS alleges that the parties executed the NDA in August 2016 and, further, that the NDA was expressly incorporated into both the Purchase Agreement and Termination Agreement.[4]   (Doc. No. 1 at ¶¶ 16, 29, 32, 49, 51.) The Complaint identifies the provisions of the NDA that define the term "Confidential Information" and alleges that the "internal structure of" the RecoverMax system and the names of its suppliers both constitute "Confidential Information" under that provision.[5] (*Id.* at ¶¶ 17, 18, 59, 60) (quoting Doc. No. 1-1 at Section 1.) Notably, BPS also identifies the specific provisions of the NDA that it asserts was breached by Inashco.  Specifically, BPS alleges that Inashco breached Sections 2 and 3 of the NDA, which provide that Inashco "shall maintain the Confidential Information in strict and absolute confidence at all times" and "shall use [it] only for the purposes agreed to between the Parties and for the purpose of determining whether the Parties wish to enter into the Potential Transaction." (Doc. No. 1 at ¶ 19;

---

[4] As noted *supra*, BPS attaches signed copies of each of these contracts to the Complaint as Exhibits.  (Doc. Nos. 1-1, 1-2, and 1-3.)

[5] In relevant part, the NDA defines "Confidential Information" as "proprietary information concerning the **components, construction, and processes of BPS's RecoverMax technology**" as well as "technical information regarding technologies, know-how, inventions, techniques, development, processes, specifications, trade secrets; products and product designs; . . . **names of suppliers**, customers, strategic partners, sources, costs . . ." (Doc. No. 1-1 at Section 1) (emphasis added).

Doc. No. 1-1 at Sections 2 and 3.)  BPS alleges that Inashco breached these provisions when it used BPS's confidential information to (1) contact and order parts from BPS's supplier, and (2) use those parts as well as its knowledge of the internal components of BPS's RecoverMax system to modify the Palla Mill machine "to accomplish the same results as BPS's RecoverMax systems." (Doc. No. 1 at ¶¶ 19, 56, 59, 60.)

Taken together, the Court finds that the above factual allegations are sufficient to withstand dismissal under Rule 12(b)(6).  BPS alleges the specific provision of the NDA that Inashco allegedly breached as well as the manner in which Inashco breached it.  While Inashco complains that BPS failed to plead detailed factual allegations (including how and when its confidential information was used, what the Palla Mill system is, how or when it was supposedly modified, the identity of the supplier contacted by Inashco, when the supplier was contacted, etc.), Fed. R. Civ. P. 8 does not require "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).  Rather, that Rule requires "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id*.  Requiring the level of specificity demanded by Inashco would essentially impose a heightened pleading standard where the Rules do not require one.  *Compare Pardus*, 551 U.S. at 93 (under Rule 8, a plaintiff need not plead specific facts but must provide fair notice of the claim and the grounds upon which it rests) with *Bennett v. MIS Corp*., 607 F.3d 1076, 1100 (6th Cir. 2010) (under heightened pleading standard of Rule 9(b), a plaintiff must plead "the time, place and content of the alleged misrepresentation ...")

The Court declines to institute such a heightened pleading standard here.  As noted above, under Rule 8, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."

*Iqbal*, 556 U.S. at 678.  Upon careful review, the Court concludes that the Complaint sufficiently pleads factual content that permits the reasonable inference that the defendants breached the NDA.

The Court also rejects Inashco's argument that BPS's breach of contract claim fails because "BPS makes no effort to address why that information would not be subject to one of the exceptions contained in Section 4 of the NDA."  (Doc. No. 5 at p. 12.)  Section 4 of the NDA provides that:

> This Agreement imposes no obligation upon a Recipient with respect to any Confidential Information to the extent that the Confidential  Information:  (a) was possessed by the Recipient prior to its receipt from the Disclosing Party; (b) is or becomes a matter of public knowledge through no fault of the Recipient; (c) is rightfully received by the Recipient from a third party not owing a duty of confidentiality to the Disclosing Party; (d) is disclosed to the Recipient by, or with the authorization of, the Disclosing Party; (e) is independently developed by the Recipient without any use of the Disclosing Party's Confidential Information; or (f) is required to be disclosed by the Recipient pursuant to an order of a court of competent jurisdiction, by applicable law or regulation, or by valid subpoena or similar process, provided that the Recipient shall provide the Disclosing Party with adequate prior written notice of such legal requirement and, to the extent possible, with the opportunity to oppose the disclosure or obtain a protective order.

(Doc. No. 1-1 at Section 4.)  Relying on this language, Inashco asserts that "[t]o allege a plausible claim for breach of this NDA, BPS must plead facts showing that the names of its suppliers and information regarding the common dust control component were not possessed by Inashco prior to BPS's disclosure of that information, were not a matter of public knowledge, were not rightfully received by Inashco from a third party, and were also not disclosed to Inashco by BPS or by anyone authorized by BPS."  (Doc. No. 12 at p. 7.)

This argument is without merit.  The Confidential Information at issue is not simply the names of BPS's suppliers.  Rather, the Complaint alleges that Inashco's alleged breach of the NDA involved using its knowledge of the internal components, structure, and operation of the RecoverMax system, as well as its knowledge of BPS's suppliers, to modify the Palla Mill system to achieve the same

12

results as the RecoverMax system.  Specifically, BPS alleges that, after the NDA was executed, it provided several proposed process flow diagrams to Inascho and "allowed Inascho's Engineers to see the internal configuration of the RecoverMax system." (Doc. No. 1 at ¶¶ 23, 26, 33-35.)  BPS further alleges that it engaged in "repeated back and forth communications" with Inashco during which it "explained how the RecoverMax system, while similar to the Palla Mill technology in some respects, was crafted specifically to achieve the recovery of metals from friable materials." (*Id*. at ¶ 35.) Notably, BPS alleges that "[d]uring these communications, BPS repeatedly noted that this information was subject to the NDA as it involved proprietary information regarding the RecoverMax system and process." (*Id*. at ¶ 36.)

Based on the above, the Court rejects Inashco's argument that BPS's breach of contract claim is subject to dismissal because BPS failed to allege that the names of its suppliers were not public knowledge or otherwise possessed by Inashco prior to the NDA.  This argument mischaracterizes and oversimplifies BPS's claim and is without merit.  Accordingly, and for all the reasons set forth above, Inashco's Motion to Dismiss BPS's breach of contract claim is denied.

### B.      Trade Secrets Claims (Count II)

In Count Two, BPS alleges that "the internal workings of BPS's RecoverMax system, the components necessary to install the system in a facility, and the vendors who supply such components are trade secrets."  (Doc. No. 1 at ¶ 64.)  BPS further alleges that "[i]n forming a mutual business relationship with Inashco, BPS disclosed these trade secrets to Inashco with the assurance that such information would be kept confidential."  (*Id*. at ¶ 65.)  BPS claims that Inashco has "used these trade secrets to create a system that performs essentially the same function as BPS's RecoverMax system

13

without having to compensate BPS." (*Id.* at ¶ 66.)  Finally, BPS alleges that "Inashco's use of BPS's trade secret information in this manner was not authorized by BPS."  (*Id.* at ¶ 67.)

Inascho argues that this claim should be dismissed for several reasons.  (Doc. No. 5 at pp. 13-16.)  First, Inashco asserts that BPS's trade secret claim fails because BPS "fails to identify any law, or the elements of that law, that underpin its claim" and, therefore, Inascho has "no understanding as to what law Plaintiff believes is relevant to the claims at hand."  (*Id.*)  Second, Inashco argues that BPS has failed to sufficiently identify "what the actual trade secrets are that may be at issue in this case," noting that the terms "internal workings" and "components" are overly broad and vague.  (*Id.*)  Inashco further asserts that this claim fails because BPS fails to plead any facts suggesting that the alleged confidential information at issue meets the definition of a trade secret, i.e., that it is not generally known, how it provides economic value to BPS, or how BPS used reasonable steps to protect it.  (*Id.*) Third, and finally, Inashco argues that BPS has failed to sufficiently allege "how the supposed trade secret information was improperly used."  (*Id.*)

In response, BPS argues that it is not required, at the pleading stage, to identify the specific law that its claims fall under.  (Doc. No. 11 at p. 9.)  BPS further asserts that a choice of law analysis is not necessary at this point because both Ohio and Maryland have identical elements for their respective state law trade secret misappropriation claims.  (*Id.* at p. 10.)  BPS maintains that it has sufficiently plead trade secrets claims under either of these state's laws because the Complaint sets forth facts to support that the RecoverMax system's "components, configurations, and process as well as the identity of its suppliers are trade secrets."  (*Id.* at p. 11.)  BPS further asserts that it has sufficiently alleged that Inashco improperly used its trade secrets because the Complaint sets forth facts that "Inashco took BPS's information, canceled its agreements with BPS to purchase and use

14

the RecoverMax system, and used the information to modify a competitor's product to achieve the same result."  (*Id*. at p. 13.)

In reply, Inasho acknowledges that Ohio and Maryland law require "essentially the same factors" to properly allege a trade secrets claim.  (Doc. No. 12 at p. 8.)  However, Inascho maintains that, under either state's law, BPS's Complaint is insufficient because it "offers no factual support for how the entire RecoverMax system meets either of the Maryland or Ohio trade secrets standards or how that system, as a whole, supports a claim that only particular parts of it were purportedly misused here."  (*Id*.)

As the parties agree that the elements of a trade secrets claim are essentially the same under both Ohio and Maryland law, the Court need not decide, at this time, which of these state's laws apply.  Under Ohio law, in order to prevail on a misappropriation of trade secrets claim, a plaintiff must prove: (1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret.  *See Tomaydo-Tomahdo, LLC v. Vozary*, 2017- Ohio- 4292, 82 N.E.3d 1180, 1184 (Ohio App. 8th Dist. 2017).  *See also Goken America, LLC v. Bandepalya*, 2014 WL 6673830 at * 5 (S.D. Ohio Nov. 24, 2014).  Maryland law provides similar elements.  *See AirFacts, Inc. v. deAmezaga*, 909 F.3d 84, 95 (4th Cir. 2018) (""To prove misappropriation of a trade secret [under the Maryland Uniform Trade Secrets Act], a plaintiff must show (1) that it possessed a valid trade secret, (2) that the defendant acquired its trade secret, and (3) that the defendant knew or should have known that the trade secret was acquired by improper means.") (quoting *Trandes Corp. v. Guy F. Atkinson Co*., 996 F.2d 655, 660 (4th Cir. 1993) (citing Md. Code Com. Law § 11-1201(c)(1)).

15

With regard to the first element, courts have found that the determination of whether information constitutes a trade secret is a highly fact-specific inquiry. *See DeBoer Structures Inc. v. Shaffer Tent & Awning Co*., 233 F.Supp.2d 934, 948 (S.D. Ohio 2002); *Wellington Resource Group v. Beck Energy*, 2013 WL 5325911 at * 4-6 (S.D. Ohio Sept. 20, 2013). The Ohio Uniform Trade Secrets Act ("OUTSA") defines a trade secret as:

> Information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information**,** or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ohio Rev. Code § 1333.61(D).[6] Similarly, under Maryland law, a "trade secret" means "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from

---

[6] The Ohio Supreme Court has also adopted a number of factors to analyze whether information rises to the level of trade secret: (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information. *See State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 732 N.E.2d 373, 378 (2000). *See also Salemi v. Cleveland Metroparks*, 145 Ohio St.3d 408, 414, 49 N.E.2d 1296, 1302 (2016). Maryland courts evaluate these same factors as well. *See, e.g., Ultimate Outdoor Movies, LLC v. FunFlicks, LLC,* 2019 WL 2233535 at * 17 (D. Md. May 23, 2019) (citing *Allan M. Dworkin, DDA, PA v. Blumenthal*, 77 Md. App. 774, 781-782, 551 A.2d 947, 950 (1989)).

its disclosure or use; and  (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Md. Code Com. Law § 11-1201(e).

The Court finds BPS has sufficiently alleged the existence of trade secrets.  Both Ohio and Maryland provide that technical information, designs, and processes may constitute trade secrets provided the other requirements of the statutes are met.  *See* Ohio Rev. Code § 1333.61(D); Md. Code Com. Law § 11-1201(e).  Here, BPS alleges that the "internal workings" of BPS's RecoverMax system, including the "components necessary to install the system in a facility," constitute trade secrets.  (Doc. No. 1 at ¶ 64.)  Moreover, BPS expressly alleges that information regarding the technical design and components of its RecoverMax system is confidential and proprietary (*id*. at ¶¶ 36, 65) and, further, that it took precautions to safeguard the secrecy of this information by requiring Inashco to sign the NDA before allowing Inashco access to it (*id*. at ¶¶ 16-18, 33, 35-36).  BPS further alleges that, under the Purchase Agreement, Inashco agreed to pay a license fee in order to use the RecoverMax system and, further, that the parties agreed Inashco could have exclusive use of that technology in certain geographic areas for an additional fee.  (Doc. No. 1 at ¶¶ 30-31; Doc. No. 1-2 at pp. 4-9.)

For the following reasons, these allegations are sufficient to plausibly allege the existence of a trade secret under the factors considered by both Ohio and Maryland courts.  With regard to BPS's efforts to maintain the secrecy of its trade secret information, the existence of the NDA and exclusive licensing provisions of the Purchase Agreement are sufficient to demonstrate that BPS undertook efforts to protect the confidential nature of its trade secret information. *See Wellington Resource Group*, 2013 WL 5325911 at * 6 (finding plaintiff had sufficiently alleged the existence of a trade secret where the complaint alleged that the parties had entered into a Non-Disclosure Agreement);

*Cincom Systems, Inc. v. LabWare,* 2021 WL 675437 at * 4 (S.D. Ohio Feb. 22, 2021) (finding plaintiff sufficiently alleged the existence of a trade secret, in part, because the existence of an exclusive licensing agreement "allow[s] the Court to reasonably infer that it is plausible that the VSE Software 'derives independent economic value from not being generally known' and is 'the subject of efforts that are reasonable under the circumstances to maintain its secrecy.'") *See also RaceRedi Motorsports, LLC v. Dart Machinery,* 640 F.Supp.2d 660, 668 (D. Md. July 19, 2009) ("Dart took unequivocal measures to ensure secrecy of the data and other information transmitted to RaceRedi in the form of a Confidentiality Agreement signed by both parties … The existence of such Confidentiality Agreement easily satisfies the second part of the trade secret definition for the purposes of a Rule 12(b)(6) motion."); *Myung Ga, Inc. v. Myung Ga of MD, Inc.,* 2011 WL 3476828 at * 7 (D. Md. Aug. 8, 2011) (finding that "the exclusive nature of the license with Myung Ga of S & S, Inc., and the fact that it did not allow for assignment of rights, suggests that Plaintiff took measures to ensure the secrecy of its recipes").

With regard to the economic value of BPS's trade secret information, the Court finds that BPS sufficiently alleged the independent economic value of its technical information through its allegations that Inashco (1) sought out and contracted with BPS in order to obtain access to it; and (2) agreed to pay a license fee in exchange for its exclusive use of BPS's RecoverMax technology in certain geographic areas. *See, e.g., Wellington Resource Group,* 2013 WL 5325911 at * 6; *Cincom Systems, Inc. v. LabWare,* 2021 WL 675437 at * 4.

Inashco nonetheless argues that BPS's claim fails because BPS fails to identify its trade secrets with greater specificity. This argument is without merit. Courts have found that "'so long as [the plaintiff] can put forth general categories of its trade secrets and provide the type of factual

18

allegations ... that allow for the reasonable inference that [the defendants] improperly disclosed some of those trade secrets ... [the plaintiff] has done all that is required to survive a motion to dismiss.'" *Productivity-Quality Systems, Inc. v. CyberMetrics Corp.*, 2018 WL 2009673 at * 8 (S.D. Ohio Apr. 30, 2018), *adopted by*, 2018 WL 2247208 (S.D. Ohio May 16, 2018)) (quoting *Phoenix Process Equip. Co. v. Capital Equip. & Trading Corp.*, 2017 WL 157834 at *8 (W.D. Ky. Jan. 13, 2017), *reconsideration granted on other grounds*, 250 F.Supp.3d 296 (W.D. Ky. Apr. 20, 2017)). As one court noted:

> [V]arious federal courts have agreed that plaintiffs' pleadings need not disclose in detail trade secrets that have been misappropriated. This makes sense: Trade secrets are valuable because they are secret—the secret information gives the user a competitive edge in a market for the very reason that the information is unknown to competitors. Requiring a plaintiff to disclose with specificity what trade secrets were misappropriated would expose the secrets and undermine their value.

*Church Mut. Ins. Co. v. Smith*, 2015 WL 3480656 at *4 (W.D. Ky. 2015). *See also Cincom Systems, Inc.,* 2021 WL 675437 at * 4; *Productivity-Quality Systems, Inc*, 2018 WL 2009673 at * 8; *More than Gourmet, Inc. v. Finnegan*, Case No. 5:18cv2509 (N.D. Ohio Sept. 10, 2019) (Doc. No. 13 at p. 12-13.) *See also Paragon Sys., Inc. v. Hughes*, 2020 WL 6292728 at * 2 (D. Md. Oct. 27, 2020) ("While Defendants fairly point to some degree of generality in the allegations at this early stage of the case, the allegations suffice to give Defendants fair notice of the claims, and the claims alleged are plausible.") Here, BPS's allegations are sufficient to allow the Court to reasonably infer that technical information regarding its RecoverMax system could qualify as a trade secret. The Court further finds that BPS's allegations are sufficient to give Inashco fair notice of the basis for this claim. Thus, the Court rejects Inashco's argument that BPS's trade secrets claim should be dismissed because it fails to sufficiently plead the existence of "trade secrets."

19

The Court also rejects Inashco's argument that BPS failed to sufficiently plead misappropriation.  Under Ohio law, "misappropriation" of a trade secret is defined as follows:

> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;

> (2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:

> > (a) Used improper means to acquire knowledge of the trade secret;

> > (b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;

> > (c) Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Ohio Rev. Code § 1333.61(B).  Similarly, Maryland law defines "misappropriation," in relevant part, as the: "(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) Disclosure or use of a trade secret of another without express or implied consent by a person who: (i) Used improper means to acquire knowledge of the trade secret; or (ii) At the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was: 1. Derived from or through a person who had utilized improper means to acquire it; 2. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or 3. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use." Md. Code Com. Law § 11-1201(c).  *See also AirFacts, Inc*., 909 F.3d at 95.

The Court finds BPS has sufficiently alleged that Inashco improperly used BPS's trade secrets. As noted above, BPS alleges that Inashco gained access to the internal workings and components of the RecoverMax system after signing the NDA and thereby agreeing to maintain the secrecy of this information. (Doc. No. 1 at ¶¶ 16-19, 23, 33-34.) BPS alleges that, after terminating the Purchase Agreement with BPS, Inashco improperly used its knowledge of BPS's trade secrets to modify the Palla Mill product to achieve the same results. (*Id*. at ¶ 54.) The Court finds that these factual allegations are sufficient, at this early stage of the case, to withstand dismissal because they plausibly allege that Inashco (1) used BPS's trade secrets without express or implied consent; and (2) knew or had reason to know, at the time of such use, that its knowledge of BPS's trade secrets was acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use.

Accordingly, and for all the reasons set forth above, the Court finds, reading the Complaint as a whole and viewing the allegations in a light most favorable to the Plaintiff, that BPS's allegations are sufficient to state a plausible claim for relief for misappropriation of trade secrets.

## C. Unjust Enrichment (Count III)

Finally, in Count Three, BPS alleges a claim for unjust enrichment based on Inashco's retention of BPS's confidential and proprietary information regarding its RecoverMax system. (Doc. No. 1 at ¶¶ 71-74.) Inashco argues that this claim should be dismissed as a matter of law because the alleged conduct is covered by a valid and enforceable agreement, i.e., the NDA. (Doc. No. 5 at p. 16.) In response, BPS argues that "both Maryland and Ohio courts recognize the right of a plaintiff to plead an unjust enrichment claim in the alternative unless there is an agreement between the parties that there is an express contract and that the contract covers all of the conduct alleged." (Doc. No. 11 at p. 14.) For the following reasons, the Court concludes that dismissal of this claim is warranted.

21

A claim for unjust enrichment "arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain." *Hambleton v. R.G. Barry Corp*., 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984) (quoting *Hummel v. Hummel*, 133 Ohio St. 520, 525, 14 N.E.2d 923 (1938)).  To establish a claim for unjust enrichment under Ohio law, a party "must demonstrate that (1) he conferred a benefit upon a defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." *RG Long & Assocs., Inc. v. Kiley*, 2015 WL 3824365 at *2 (Ohio Ct. App. 12th Dist. June 22, 2015).  The elements of this claim are substantially the same under Maryland law.  *See, e.g., Martz v. Day Development Company, L.C.*, 416 F.Supp.3d 517, 526 (D. Md. 2019) ("The Maryland Court of Appeals has held that for a claim of unjust enrichment to succeed, the plaintiff must show: (1) 'A benefit conferred upon the defendant by the plaintiff'; (2) 'An appreciation or knowledge by the defendant of the benefit'; and (3) 'The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.'") (quoting *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295, 936 A.2d 343 (2007)).

However, in the absence of fraud or bad faith, both Ohio and Maryland law prohibit recovery under a theory of unjust enrichment where an express contract covers the same subject.  *See, e.g., AP Alternatives Inc. v. Rosendin Electric, Inc.*, 2020 WL 2526957 at * 9 (N.D. Ohio May 18, 2020); *R.J. Wildner Contracting Co., Inc. v. Ohio Turnpike Comm'n*, 913 F. Supp. 1031, 1043 (N.D. Ohio 1996); *Champion Contracting Const. Co. Inc. v. Valley City Post*, 2004 WL 1459298 at *6 (Ohio Ct. App. 9th Dist. June 30, 2004) ("The doctrine of unjust enrichment, however, is 'inapplicable if an express agreement existed concerning the services for which compensation is sought; the parameters of the

22

agreement limit the parties' recovery in the absence of bad faith, fraud or illegality.'")(quoting *Pawlus v. Bartrug*, 109 Ohio App.3d 796, 673 N.E.2d 188, 191 (Ohio Ct. App. 9th Dist. 1996)). *See also Janusz v. Gilliam*, 404 Md. 524, 537, 947 A.2d 560, 568 (2008) ("In Maryland, a claim of unjust enrichment, which is a quasi-contract claim, 'may not be brought where the subject matter of the claim is covered by an express contract between the parties.'") (quoting *County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc*., 358 Md. 83, 96, 747 A.2d 600, 607 (2000)).

Although the existence of an express contract that governs the same subject matter bars an unjust enrichment claim, "where the existence of a contract is in dispute, [an] unjust enrichment claim may be pled in the alternative to a breach of contract claim." *Right-Now Recycling, Inc. v. Ford Motor Credit Co*., 2015 WL 1197671 at *31 (S.D. Ohio Oct. 1, 2014).  Even at the motion to dismiss stage, however, if the existence of the contract is not in dispute, courts routinely dismiss unjust enrichment claims as precluded by the contract.  *See, e.g., AP Alternatives, LLC,* 2020 WL 2526957 at * 5 ("The Court finds that APA's unjust enrichment claim should be dismissed, as Rosendin does not dispute the existence of the Subcontract and the Subcontract governs the additional work included in APA's unjust enrichment claim."); *Pinkerton v. Gov't Employees Ins. Co*., 2019 WL 1026227, at *7 (N.D. Ohio Mar. 4, 2019) ("In this case, no party disputes the existence of the underlying insurance contract governing the issues in this case. Because there is no question that an express written contract exists between Pinkerton and defendants covering the disputed UIM coverage, Ohio law precludes a claim for unjust enrichment."); *N. Cent. Elec. Coop., Inc. v. Linde, LLC,* 2019 WL 460485 at *4 (N.D. Ohio Feb. 6, 2019) ("Because the parties do not dispute the existence of a contract, but only whether that contract was breached, North Central's unjust enrichment claim may not proceed.")  *See also FLF v. World Publications, Inc.,* 999 F. Supp. 640, 642 (D. Md. 1998) ("Given the express contract between

the parties here specifically providing that WPI would not be liable for severance payments, FLF's claim that WPI has been 'unjustly' enriched because it has not made those same payments is clearly without basis.").

In the instant matter, Inashco does not challenge the validity or enforceability of the NDA. Rather, Inashco merely asserts it is not in breach of the NDA.  Thus, the existence of the NDA is not in dispute and, under both Ohio and Maryland law, any claim for unjust enrichment based on the same matters governed by the NDA is barred.  While BPS argues that this determination is premature because it is entitled to plead claims in the alternative, that argument goes against the weight of authority finding that dismissal is warranted even at the motion to dismiss stage when the existence of the contract is not in dispute.

Accordingly, Inashco's Motion to Dismiss BPS's unjust enrichment claim is granted.

## IV.    Conclusion

Accordingly, and for all the reasons set forth above, Defendant Inashco's Motion to Dismiss (Doc. No. 5) is GRANTED IN PART and DENIED IN PART as follows.  Defendant's Motion is granted with respect to BPS's unjust enrichment claim but denied as to BPS's breach of contract and misappropriation of trade secrets claims.

**IT IS SO ORDERED.**

 _s/Pamela A. Barker_
PAMELA A. BARKER
Date:  October 28, 2021                                        U. S. DISTRICT JUDGE