IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **BEST PROCESS SOLUTIONS, INC.,** | Case No. 1:21-cv-0662 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| **BLUE PHOENIX INASHCO USA, INC.,** | |
| Defendant. | MEMORANDUM OPINION & ORDER |

Before the Court is Defendant Blue Phoenix Inashco USA, Inc.'s ("Inashco") Motion for Sanctions for Violation of the Court's Protective Order filed on August 18, 2023. (Doc. Nos. 84, 85.) On September 1, 2023, Plaintiff Best Process Solutions, Inc. ("BPS") filed an Opposition. (Doc. No. 91.) On September 8, 2023, Inashco filed a Reply. (Doc. No. 94.)

For the following reasons, the Court GRANTS IN PART and DENIES IN PART Inashco's Motion for Sanctions.

**I.	Background**

BPS manufactures bulk processing and recycling equipment systems. (Doc. No. 1, ¶ 7.) One of the equipment systems it makes is the RecoverMax Fines Process. (*Id*. at ¶ 8.) This system allows for the recovery of metals—such as copper, silver, and gold—from incinerator bottom ash. (*Id*.) Inashco processes incinerator bottom ash from power stations. (*Id*. at ¶ 10.) It recovers low grade metals from the ash so that they can be further processed into high grade metals. (*Id*. at ¶ 11.)

Inashco became interested in BPS's RecoverMax system. (*Id*. at ¶ 12.) After visits, tests, the signing of a nondisclosure agreement ("NDA"), and the signing of a letter of intent, on January 4, 2017, Inashco entered into a purchase agreement with BPS for the RecoverMax system. (*Id*. at ¶¶

13-16, 24, 29.) On May 11, 2017, Inashco purchased one RecoverMax system for installation in its Putnam, Connecticut facility. (*Id*. at ¶ 37.) On January 30, 2018, Inashco purchased a second system for installation in its Lancaster, Pennsylvania facility. (*Id*. at ¶ 41.) In July 2018, BPS installed its system in Inashco's Putnam facility. (*Id*. at ¶ 42.) Almost immediately after installation, Inashco told BPS it was not satisfied with the system's performance. (*Id*. at ¶ 43.) Ultimately, the parties agreed to unwind the purchase agreement and orders. (*Id*. at ¶¶ 49, 50.)

Inashco replaced BPS's RecoverMax system with two Palla Mill systems it imported into the United States. (*Id*. at ¶¶ 48, 53.) According to BPS, Inashco modified these Palla Mill systems so that they accomplish the same result as BPS's RecoverMax system. (*Id*. ¶ 59.)

On March 24, 2021, BPS filed the instant action against Inashco, alleging it violated the parties' NDA (Claim 1), misappropriated its trade secrets (Claim 2), and was unjustly enriched (Claim 3). (*Id*. at ¶¶ 55-75.) On November 24, 2021, the parties filed a Joint Motion for Entry of Stipulated Confidentiality and Protective Order, attached their proposed order, and asked this Court to approve and enter it. (Doc. Nos. 17, 17-1.) Upon review of the parties' proposed order and finding it to be consistent with Appendix L of the Local Civil Rules and the Court's Standing Order, the Court approved and entered the Stipulated Confidentiality and Protective Order. (Doc. No. 19.) The Protective Order defines "documents" as including "initial disclosures, all responses to discovery requests, all deposition testimony and exhibits, other materials which may be subject to restrictions on disclosure for good cause and information derived directly therefrom." (*Id*. at PageID# 229, ¶ 1.) It further provides, in relevant part, that

> Documents designated "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER" under this Order shall not be used or disclosed by the parties, counsel for the parties, or any other persons identified in [the following paragraphs] (as

applicable) for any purpose whatsoever other than to prepare for and to conduct discovery and trial in this action, including any appeal thereof.

(*Id*. at PageID# 232, ¶ 6(a).)

On December 3, 2021, the Court held a Case Management Conference and set case deadlines. (Doc. Nos. 21, 22.) The parties jointly moved to extend the case deadlines four times. (Doc. Nos. 44, 58, 72, 80.) The final deadline for fact discovery was February 10, 2023, and the final deadline for expert discovery was July 14, 2023. (Non-Document Orders dated December 16, 2022, and June 2, 2023.)

On January 14, 2022, BPS requested to inspect Inashco's Palla Mill systems at its Lancaster and Putnam facilities.[1] (Doc. No. 29-3.) Inashco opposed BPS's request. (Doc. No. 29.) On June 22, 2022, the Court referred the parties' discovery dispute to the assigned magistrate judge. (Doc. No. 33.) Ultimately, the parties resolved all but one issue: who would attend the inspections. (Doc. No. 40.) Inashco sought to prevent BPS's president—Timothy Conway ("Conway")—from attending because it was concerned that Conway "[would] be able to use the information gained from an inspection of Inashco's facilities for patent prosecution before the USPTO [United States Patent and Trademark Office]." (Doc. No. 41, PageID# 615.)

On July 28, 2022, the magistrate judge denied Inashco's request, finding that Inashco failed to "make a particularized showing that [Inashco's machinery equipment used and relating to metal recovery] is confidential and [to] come forth with specific examples of competitive harm if it is seen by Conway." (Doc. No. 47.)

---

[1] The initial request was to inspect all Inashco's Palla Mill systems in the United States. (Doc. No. 29-3.) The parties later agreed to an inspection of only two of Inashco's ash recovery facilities that use Palla Mill systems—one in Lancaster, Pennsylvania and another in Putnam, Connecticut. (*See* Doc. No. 47.)

On August 4, 2022, BPS inspected Inashco's Lancaster facility. (Doc. No. 85, PageID# 1287.) Conway attended the inspection. (*Id*.) On August 19, 2022, BPS filed a patent application with Conway as the named inventor (the "'057 Application"). (*Id*.) On September 26, 2022, BPS inspected Inashco's Putnam facility. (*Id*.) Conway again attended the inspection. (*Id*.) BPS produced photographs and videos from both inspections that it designated as confidential under the Protective Order. (*Id*.)

On January 10, 2023, the USPTO rejected the '057 Application. In response, on February 21, 2023, Conway submitted a declaration, which reads, in relevant part:

> My company, BPS, sued [Inashco] in the United States District Court for the Northern District of Ohio in Case No. 1:21-CV-662, *inter alia*, for breach of confidentiality.
>
> . . .
>
> BPS won a discovery dispute in the litigation permitting me to inspect the Inashco installations in Putnam, CT and Lancaster, PA where I found Inashco had constructed a system that infringed the claims of the present application.
>
> Inashco and Inashco's parent company, self-described as the world's largest ash processor, had numerous systems, all non-infringing, available but chose to copy the system disclosed and claimed in the present application for installations in the U.S. Such copying is evidence of the non-obviousness of the present application.
>
> The US PTO Class 241 – Solid Material Comminution or Disintegration has more than 400 subclasses (including decimals) and additional Cross-Reference Art Collections plus Digests. If each of these categories had only one patent listed for each subclass or entry, assuming 1/2 are expired, Inashco had at least 200 alternative non-infringing options to avoid copying the claims of the present application.

(Doc. No. 84-1, PageID# 1262-63.) On April 18, 2023, the '057 Application issued into the '390 Patent. (Doc. No. 85, PageID# 1289.)

4

On July 11, 2023, BPS served the '390 Patent on Inashco. (Doc. No. 85, PageID# 1289.) The following day, BPS used the '390 Patent during its deposition of Jerome Downey, Inashco's liability expert. (Doc. No. 85-1, PageID# 1325.)

On August 18, 2023, Inashco filed the instant Motion for Sanctions for Violation of the Court's Protective Order. (Doc. Nos. 84, 85.) Inashco alleges that BPS and Conway violated the Protective Order by using information it derived from the inspections of Inashco's Lancaster and Putnam facilities to prosecute their '057 Application before the USPTO. (Doc. No. 85, PageID# 1284.) On September 1, 2023, BPS filed an Opposition. (Doc. No. 91.) And, on September 8, 2023, Inashco filed a Reply in support of its Motion. (Doc. No. 94.)

**II.      Legal Standard**

The parties disagree about the appropriate legal standard for the Court to apply. Inashco argues that Federal Rule of Civil Procedure 37(b)(2), Federal Rule of Civil Procedure 16(f), and the Court's inherent power all support sanctioning BPS for its alleged violation. (Doc. No. 85, PageID# 1290-91.) BPS first questions whether Rule 37(b)(2) applies to violations of protective orders. (Doc. No. 91, PageID# 2228.) It then argues that the four-part test in *Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953 (6th Cir. 2013), which Inashco cites, is inapplicable when a party is not requesting default or dismissal. (*Id*. at PageID# 2229.) Finally, BPS contends that Inashco must prove a violation of a definite and specific term of the Protective Order by clear and convincing evidence. (*Id*. (citing *Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1243 (6th Cir. 1996)).

The parties' disagreement is understandable. Some courts have cited Rule 37(b)(2) as a basis to sanction a party for violating a protective order. *See, e.g., Field Turf USA, Inc. v. Sports Constr. Grp., LLC*, 2007 U.S. Dist. LEXIS 91238 at *12 (N.D. Ohio Dec. 12, 2007) (citing Rule 37(b)(2) for

5

the proposition that "[t]he Court has the power to dismiss a claim or enter judgment against a party for failure to comply with discovery orders, including protective orders."); *see also Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094 n.1 (6th Cir. 1994) (analyzing a district court's dismissal of a case for violating a protective order under Rules 41(b) and 37(b)); *but see Coleman*, 23 F.3d at 1099 (Ryan, J., dissenting) ("Rule 37(b), upon which the district court relied, in part, and upon which the majority appears to have heavily relied, judging from its 'prejudice' analysis, is singularly inappropriate authority for determining whether dismissal was an option available to the district court as a sanction for the violation of its protective order.").

Other courts cite their own inherent civil contempt power when sanctioning a party for violating a protective order. *See, e.g., Ravin Crossbows, LLC v. Hunter's Mfg. Co.*, 2023 U.S. Dist. LEXIS 168824 at *11 (N.D. Ohio Sep. 22, 2023) (finding a party in civil contempt for violating a protective order); *see also Grace*, 72 F.3d at 1241 (analyzing a district court's order sanctioning a party for violating a protective order under the civil contempt standard).

The Protective Order itself is instructive on this question. Attachment A to the Protective Order—Acknowledgement and Agreement to be Bound—warns the signer that a "violation of the Protective Order may result in penalties for contempt of court." (Doc. No. 19, PageID# 242.) This makes sense. Although the parties stipulated to the Protective Order (Doc. No. 17), the Court entered it. (Doc. No. 19.) That is to say, it is the Court's order. And a court enforces compliance with its orders through civil contempt sanctions. *Clapper v. Clark Dev., Inc.*, 747 F. App'x 317, 322 (6th Cir.

2018) (citing *Downey v. Clauder*, 30 F.3d 681, 685 (6th Cir. 1994)). Accordingly, the Court will apply the civil contempt standard to evaluate Inashco's Motion for Sanctions.[2]

Civil contempt requires Inashco to "demonstrate by clear and convincing evidence" that BPS "knowingly 'violated a definite and specific order of the court.'" *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017) (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)). The "definite and specific" requirement means that a party "'fully under[stood]' the meaning of a court order and yet 'ch[ose] to ignore its mandate.'" *Id*. (quoting *Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)). The Court "must construe any ambiguity [in the Court's order] in favor of the party charged with contempt." *Id*. If Inashco carries its burden, then "the onus shifts to [BPS] to demonstrate that it was unable to comply with the [C]ourt's order." *Id*. Whether to hold a party in contempt is within the sound discretion of the Court. *Id*.

**III. Analysis**

Inashco argues that Conway's statements about the Lancaster and Putnam inspections in his declaration to the USPTO violated paragraph 6(a) of the Protective Order. (Doc. No. 94, PageID# 3325.) BPS counters that Conway did not rely on any confidential documents to prepare his declaration to the USPTO. (Doc. No. 91, PageID# 2229-30.)

Paragraph 6(a) of the Protective Order provides, in relevant part, that the parties shall not use nor disclose documents designated confidential "for any purpose whatsoever other than to prepare for and to conduct discovery and trial in this action, including any appeal thereof." (Doc. No. 19,

---

[2] As further explained below, Inashco argues in its Reply that Conway's declaration to the USPTO is clear and convincing evidence of his and BPS's violation of the Protective Order. (Doc. No. 94, PageID# 3325.) Therefore, Inashco appears to ultimately concur that the civil contempt standard applies to its Motion.

PageID# 232.)  The Protective Order's first paragraph defines "documents" as including "[a]ll documents produced during discovery, including . . . other materials which may be subject to restrictions on disclosure for good cause and information derived directly therefrom." (*Id*. at PageID# 229.)  The first question is thus whether the inspections—and Conway's opinions based on those inspections—fall within the Protective Order's definition of "document."

An inspection is patently not a physical document.  But the Protective Order's definition of documents is not limited to physical pieces of paper; it also includes "other materials" produced during discovery.  Black's Law Dictionary defines "material" to include not only "solid substance[s] such as . . . paper" but also "[i]nformation, ideas, data, documents, or other things that are used in reports, books, films, studies, etc."  MATERIAL, Black's Law Dictionary (11th ed. 2019).  The inspections are "information" that Inashco produced during discovery.  And any opinions Conway drew from the inspections were "derived directly" from the inspections.  Therefore, the inspections and Conway's opinions are "documents" under the Protective Order's definition.

BPS produced videos and photographs from the inspections, and it marked those confidential. (Doc. No. 85, PageID# 1287.)  Thus, BPS itself understood that the inspections were confidential and subject to the Protective Order.  Moreover, in its Opposition to Inashco's Motion for an Additional Protective Order, BPS specifically argued that there was no factual support for Inashco's assumption that Conway would violate the Protective Order if allowed to attend the inspections.  (Doc. No. 42, PageID# 635-36.)  This is further evidence that BPS understood that disclosure of confidential information gleaned from the inspections would violate the Protective Order.  *See Cernelle v. Graminex, L.L.C.*, 2022 U.S. App. LEXIS 19549 at *21 (6th Cir. July 14, 2022) (affirming district court's finding of contempt because record supported that contemnor knew what would violate the

8

court's order). In sum, the Protective Order is specific and definite, and BPS understood that it prohibits the disclosure of confidential material produced during discovery, such as the inspections, for any purpose other than to prepare for this case.

The next question is whether Inashco has demonstrated by clear and convincing evidence that Conway's declaration to the USPTO violated the Protective Order. The parties direct the Court's attention to two distinct parts of Conway's declaration. Inashco points to the beginning. There, Conway declares that he was permitted "to inspect the Inashco installations in Putnam, CT and Lancaster, PA where [he] found Inashco had constructed a system that infringed the claims of the present application." (Doc. No. 84-1, PageID# 1263.) Inashco argues that this sentence is clear and convincing evidence that Conway violated the Protective Order. (Doc. No. 94, PageID# 3325.)

BPS points to the end of Conway's declaration. There, Conway concludes based on his review of the relevant patent subclasses that "Inashco had at least 200 alternative non-infringing options to avoid copying the claims of the present application." (Doc. No. 84-1, PageID# 1263.) To support this reading, BPS attached to its Opposition an affidavit from Conway, where Conway avers that he "did not rely on the inspections of the Inashco Lancaster, PA or Putnam, CT facilities when [he] prepared [his] declaration to the USPTO." (Doc. No. 91-2, PageID# 2238, ¶ 5.)

Yet Conway explicitly refers to the inspections in his declaration to support his contention that he found Inashco had constructed a system that infringed the claims of his patent application. In other words, but for his inspections of Inashco's facilities, Conway would not have been able to declare that Inashco's system infringed the claims in his patent application. Conway thus used confidential information he derived from the inspections of Inashco's facilities to prosecute his patent application and not "to conduct discovery and trial in this action." Accordingly, Inashco has met its

burden to demonstrate by clear and convincing evidence that BPS and Conway violated the Protective Order.[3]

The fourth and final question is what the appropriate sanction is. Inashco asks that the Court (1) enjoin BPS from using and introducing its '390 Patent as evidence in this case; (2) enjoin BPS from ever enforcing the '390 Patent against Inashco; and (3) award Inashco the attorney's fees and costs it incurred during this dispute. (Doc. No. 85, PageID# 1284.) BPS specifically objects to Inashco's request that the Court enjoin BPS from ever enforcing the '390 Patent against Inashco because it is "in no way related to any potential outcome of this case and wholly inappropriate." (Doc. No. 91, PageID# 2232.)

Civil contempt sanctions serve both "to coerce an individual to perform an act" and "to compensate an injured complainant." *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991). To these ends, a court should "frame [the] sanctions so that they fit the violation in question," *Am. Consol. Indus. v. Blasingim*, 2022 U.S. Dist. LEXIS 226203 at *77 (N.D. Ohio Dec. 15, 2022), "us[ing] '[t]he least possible power to the end proposed.'" *Gascho*, 875 F.3d at 799 (quoting *United States v. Wilson*, 421 U.S. 309, 319 (1975)).

The Court agrees with BPS that enjoining it from ever enforcing the '390 Patent against Inashco is overbroad. Such a sanction would compensate Inashco beyond the injury it suffered from BPS's violation of the Protective Order. Rather, the Court concludes that one appropriate sanction is to enjoin BPS from using and introducing the '390 Patent *in this case*. This sanction serves civil contempt's first purpose: coercion. It coerces BPS to comply with the Protective Order by denying

---

[3] Generally, the burden would now shift to BPS to show it was unable to comply with the Protective Order. *Gascho*, 875 F.3d at 800. However, BPS does not make this argument in its Opposition, so the Court will not consider it.

10

it the fruits of its violation.  The Court notes as well that BPS disclosed to Inashco the '390 Patent on July 11, 2023, or approximately six months after fact discovery had closed.  Broadly, the sanction for a late discovery disclosure is that "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial."  Fed. R. Civ. P. 37(c)(1).  Accordingly, this civil contempt sanction is consistent with discovery sanctions more generally.

The Court also concludes that it is appropriate to sanction BPS by awarding Inashco the reasonable attorney's fees and costs it incurred in filing and prosecuting this Motion.  The Court declines, however, to award Inashco its fees and costs for its previous Motion for an Additional Protective Order.  "[A]n award of attorney's fees is appropriate for civil contempt in situations where court orders have been violated," *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 634 (6th Cir. 2000).  Such an award serves civil contempt's second purpose: compensation.  It compensates Inashco for the expense of having to file this Motion to bring BPS into compliance with the Protective Order.  As noted above, BPS and Conway violated the Protective Order in the very way Inashco sought to prevent through its Motion for an Additional Protective Order.  Once Inashco became aware of BPS's and Conway's violation of the Protective Order following the inspections, it attempted to resolve the dispute without the Court's intervention.  (*See* Doc. Nos. 84-2, 84-3, 84-4.)  That was unsuccessful, so it brought the instant Motion for Sanctions.  Inashco should not now be saddled with the cost of bringing BPS into compliance with the Court's Protective Order.

Accordingly, within fourteen days of this Memorandum Opinion and Order, Inashco shall file a petition with the total amount of attorney's fees and costs it incurred in filing and prosecuting the instant Motion for Sanctions.  BPS shall file any opposition within seven days of Inashco filing its petition.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Inashco's Motion for Sanctions for Violation of the Court's Protective Order. (Doc. Nos. 84, 85.) The Court finds BPS in civil contempt for violating the Protective Order. It sanctions BPS by (1) enjoining it from using and introducing the '390 Patent in this case and (2) awarding Inashco the reasonable attorney's fees and costs it incurred in filing and prosecuting the instant Motion for Sanctions. Within fourteen days of this Memorandum Opinion and Order, Inashco shall file a petition with the total amount of attorney's fees and costs it incurred. BPS shall file any opposition within seven days of Inashco filing its petition.

**IT IS SO ORDERED.**

Date: November 7, 2023

   *s/Pamela A. Barker*
PAMELA A. BARKER
U.S. DISTRICT JUDGE