# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **BEST PROCESS SOLUTIONS, INC.,** | Case No. 1:21-cv-00662 |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **BLUE PHOENIX INASHCO USA, INC.,** | |
| **Defendant.** | **MEMORANDUM OPINION & ORDER** |

Before the Court are two motions for reconsideration. On December 8, 2023, the Court granted summary judgment in favor of Defendant Blue Phoenix Inashco USA, Inc. ("Inashco") on Plaintiff Best Process Solutions, Inc.'s ("BPS") breach of contract claim, but it denied summary judgment on BPS's trade secret misappropriation claim. (Doc. No. 123.) Both parties now move the Court to reconsider its ruling.

First, on December 27, 2023, Inashco filed a Motion for Reconsideration. (Doc. No. 125.) On January 9, 2024, BPS filed a Response. (Doc. No. 129.) And, on January 16, 2024, Inashco filed a Reply. (Doc. No. 135.)

Second, on December 28, 2023, BPS filed a Motion for Reconsideration. (Doc. No. 126.) On January 10, 2024, Inashco filed a Response. (Doc. No. 133.) And, on January 17, 2024, BPS filed a Reply. (Doc. No. 136.)

The relevant factual background and procedural history are in the Court's Memorandum Opinion and Order on Inashco's Motion for Summary Judgment and will not be repeated here. (*See* Doc. No. 123, PageID# 5331-37.)

**I.     Law and Analysis**

   **A.     Motion for Reconsideration Standard**

Under both the common law and Federal Rule of Civil Procedure 54(b), district courts have the "authority . . . to reconsider interlocutory orders . . . 'as justice requires.'" *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (quoting *Citibank (South Dakota), N.A. v. FDIC*, 857 F. Supp. 976, 981 (D.D.C. 1994)). Generally, courts will do so where "there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Luna v. Bell*, 887 F.3d 290, 297 (6th Cir. 2018) (quoting *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009)). But a court is not limited to these three reasons, rather it is "free to reconsider or reverse its decision for *any reason*." *ACLU of Ky. v. McCreary Cty.*, 607 F.3d 439, 450 (6th Cir. 2010) (quoting *Cameron v. Ohio*, 344 F. App'x 115, 118 (6th Cir. 2009)) (emphasis added).

Since granting BPS's Motion for Reconsideration would render Inashco's Motion moot, the Court will consider it first.

   **B.     BPS's Motion for Reconsideration**

BPS argues that the Court should reconsider its ruling because it did not address Section 6 of the parties' Mutual Non-Disclosure Agreement ("NDA"). (Doc. No. 126, PageID# 5422.) Section 6 reads as follows:

> 6.     **Not a License Grant.**  This Agreement shall not be construed as creating, conveying, transferring, granting or conferring upon either Party any right, license or authority in or to the *information exchanged*, except the limited right to use Confidential Information for purposes of the Potential Transaction. No license or conveyance of any intellectual property rights is granted or implied by this Agreement.

2

(Doc. No. 1-1, PageID# 16 (italics added).)  BPS contends that the phrase "information exchanged" is "clearly broader" than the term "Confidential Information."  (Doc. No. 126, PageID# 5422.)  Thus, BPS argues, even if Inashco was free of its obligations as to BPS's confidential information, Section 6 still restricted Inashco's use of "other" information BPS exchanged with it.  (*Id*. at PageID# 5423.)  In other words, BPS contends that "Section 6 . . . provides a separate restriction on Inashco's use of the information" it received from BPS notwithstanding Section 4(d)'s exception.  (*Id*.)

Inashco counters that BPS's reading of Section 6 is wrong.[1]  (Doc. No. 133, PageID# 5452.)  It argues that Section 6 only means that "if a license is needed to use the information exchanged under the NDA, Section 6 prohibits a party from contending that the NDA provides such a license."  (*Id*. at PageID# 5453.)

The Court denies BPS's Motion for Reconsideration for the following reasons.

First, BPS's broad interpretation of Section 6 directly contradicts the NDA's definition of confidential information.  While the NDA does not define "information exchanged," it does define confidential information.  That complete definition is as follows:

> **1.    Definition of Confidential Information.**  The confidential information to be disclosed under this Agreement ("Confidential Information") includes proprietary information concerning the components, construction and processes of BPS's RecoverMax technology used for crushing the mineral components of a non-ferrous metal concentrate as derived from municipal solid waste ash by means of [Inashco's] process.
>
> **Confidential Information** also includes *all information, whether or not it is labeled as confidential, and whether it is disclosed before, on or after the date of this Agreement, that shall be disclosed to the Recipient in connection with the Potential Transaction* regarding the Disclosing Party or its customers, suppliers or strategic partners, or the business, operations, finances, technologies, services or products of

---

[1] Inashco also argues that BPS failed to offer any legal justification for its Motion for Reconsideration and the Court should deny its Motion for this reason as well.  (Doc. No. 133, PageID# 5451.)  While true, the Court exercises its discretion and will consider BPS's Motion.

3

>>the Disclosing Party or its customers, suppliers or strategic partners, including without limitation: any commercial, financial or technical information; information regarding technologies, know-how, inventions (whether or not patented or patentable, and whether or not in operation), techniques, developments, processes, specifications, *trade secrets*; products and product designs; formula information; customer base(s) and sourcing information; marketing, business plans and activities, business opportunities, contracts; names of suppliers, customers, strategic partners, sources, costs; projections and results; all communications between the Parties; and all other private, confidential and/or proprietary information relating to the Disclosing Party or its customers, suppliers or strategic partners or its potential customers, suppliers or strategic partners or their respective businesses, whether disclosed in writing, orally, by electronic mail, in graphic format or by inspection of tangible objects (including without limitation documents, prototypes and samples, and including summaries and other compilations prepared by the Recipient using Confidential Information).

(Doc. No. 1-1, PageID# 14-15 (italics added).) In short, confidential information's expansive definition boils down to "all information . . . disclosed."

"[I]t is axiomatic under Maryland law that a court should avoid reading a contract in a way that produces an absurd result, especially when a reasonable interpretation is available." *Chi. Title Ins. Co. v. 100 Inv. Ltd. P'ship*, 355 F.3d 759, 764 (4th Cir. 2004) (citing *Catalina Enters. v. Hartford Fire Ins. Co.*, 67 F.3d 63, 66 (4th Cir. 1995)). It is unreasonable to read "information exchanged" to be broader than "all information disclosed" such that Section 6 restricted Inashco's use of some other category of information. The reasonable interpretation is that "information exchanged" refers to the confidential information the parties disclosed to each other. Accordingly, under Section 4(d), the NDA "impose[d] no obligation upon" Inashco as to that information.

Second, BPS's reading of Section 6 directly contradicts its Complaint. In its first claim for breach of contract, BPS alleged that "[t]he NDA . . . limited Inashco's use of any *confidential* and proprietary information and technology provided by BPS" and that "Inashco materially breached the NDA by using *confidential* information obtained from BPS." (Doc. No. 1, ¶¶ 56, 59 (emphases added).) Put differently, BPS premised its entire breach of contract claim on Inashco's alleged misuse

4

of *confidential* information, not on "information exchanged" as used in Section 6 of the NDA. BPS now seeks to assert a new theory of liability under a different provision of the NDA. It cannot do this in response to a summary judgment motion. *See, e.g., Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent Bridgeport seeks to expand its claims to assert new theories, it may not do so in response to summary judgment or on appeal."); *Powell-Lee v. HCR Manor Care*, 231 F. App'x 438, 440 (6th Cir. 2007) (finding that district court "properly rejected" the plaintiff's attempt "to amend her complaint via argument in opposition to the motion for summary judgment").

Lastly, BPS did not raise this interpretation of Section 6 in its Opposition to Inashco's Motion for Summary Judgment. (Doc. No. 109.) A party "cannot use a motion for reconsideration to raise new legal arguments that could have been raised before" the Court issued its decision. *Dayton Veterans Residences Ltd. P'ship v. Dayton Metro. Hous. Auth.*, 2021 U.S. App. LEXIS 34511 at *16 (6th Cir. Nov. 19, 2021) (quoting *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007)). In the analysis section of its Opposition, BPS only once mentioned Section 6, as follows: "According to sections 2 and 6 of the NDA, no other rights to the information were being granted." (Doc. No. 109, PageID# 4960.) It never argued that "information exchanged" as used in Section 6 was "broader" than confidential information. Nor did it argue that Section 6 separately restricted Inashco's use of its information notwithstanding Section 4(d)'s exception.

For these reasons, the Court denies BPS's Motion for Reconsideration.

C. **Inashco's Motion for Reconsideration**

Inashco also moves for reconsideration. It argues that because the Court granted it summary judgment on BPS's breach of contract claim, "it automatically follows under the applicable Sixth

Circuit precedent that Inashco is entitled to summary judgment on BPS's misappropriation of trade secrets claim as a matter of law." (Doc. No. 125, PageID# 5416 (citing *BDT Prods. v. Lexmark Int'l, Inc.*, 124 F. App'x 329, 334 (6th Cir. 2005)).) Specifically, Inashco contends that since it was not in breach of the NDA, then, as a matter of law, BPS cannot establish the second and third elements of its trade secrets misappropriation claim: (2) that Inashco acquired BPS's trade secrets as a result of a confidential relationship and (3) that Inashco's use of BPS's trade secrets was unauthorized. (*Id.*)

BPS responds that Inashco ignores Section 6 of the NDA, that a contractual promise (such as the NDA) is not a requirement for a trade secrets misappropriation claim, and lastly, that *BDT Products* is distinguishable. (Doc. No. 129, PageID# 5434-38.)

For the following reasons, the Court denies Inashco's Motion for Reconsideration.

To begin, *BDT Products* is an unpublished opinion that "carr[ies] no precedential weight" and is not binding on this Court. *United States v. Webber*, 208 F.3d 545, 551 n.3 (6th Cir. 2000). Moreover, *BDT Products* applied Kentucky's Uniform Trade Secrets Act—not Ohio's, which is at issue here—and accordingly affirmed the district court's conclusion "that there was no trade secret under *Kentucky law*," not Ohio law. 124 F. App'x at 332 (emphasis added).

To the extent *BDT Products* "carr[ies] persuasive weight," its facts are distinguishable. *Webber*, 208 F.3d at 551 n.3. Relevant here[2], the Sixth Circuit in *BDT Products* affirmed the trial court's grant of summary judgment in favor of the defendant, Lexmark, because "[t]he district court was correct in its conclusion that the many agreements between BDT and Lexmark concerning confidential information expressly permitted Lexmark to use any information provided by BDT and

---

[2] The court in *BDT Products* affirmed the district court for two reasons, but Inashco cites to the decision only for this second reason. (*See* Doc. No. 135, PageID# 5470)

6

thus provided 'express or implied consent.'" 124 F. App'x at 334 (citing *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 274 F. Supp. 2d 880, 893-94 (E.D. Ky. 2003)). "Therefore," the Sixth Circuit continued, "Lexmark had a reasonable understanding that it was free to use any and all information disclosed by BDT." *Id*. This holding highlights three critical differences between the facts of *BDT Products* and the facts of this case.

First, in *BDT Products*, BDT and Lexmark signed *seven* confidentiality agreements over a six-year period. 274 F. Supp. 2d at 883. Here, conversely, the parties signed only one agreement.

Second, the agreements in *BDT Products* contained explicit language permitting Lexmark to use BDT's confidential information. Four of the agreements provided, in relevant part:

> Lexmark does not wish to receive any information which may be considered confidential or proprietary by CONTRACTOR [defined earlier as "BDT"]. Accordingly, except with respect to the rights of CONTRACTOR under valid patents and copyrights, no obligation of any kind is assumed by or is to be implied against Lexmark by virtue of Lexmark's discussions with CONTRACTOR or with respect to any information received (in whatever form) from CONTRACTOR and **Lexmark will be free to reproduce, use and disclose such information to others without limitation**.

*Id*. at 883 (emphasis added). Two agreements provided that Lexmark "**shall be free to use any such Confidential Information** provided by [BDT] subject only to the obligation not to disclose, publish or disseminate such Confidential Information during the foregoing specified period of confidentiality." *Id*. (emphasis added). The last agreement similarly read that Lexmark "**shall be free to use** any such Confidential Information provided by" BDT. *Id*. (emphasis added). Here, the parties' sole agreement lacks such an express permission for Inashco to use BPS's confidential information. Rather, the NDA contains an inexplicit exception to its confidentiality protections that is buried in a single section, and which BPS's President misunderstood and at least some of Inashco's employees overlooked.

7

Third, in *BDT Products*, BDT acknowledged at the trial court level and on appeal that the seven agreements between it and Lexmark did not protect its alleged trade secrets. 274 F. Supp. 2d at 886; 124 F. App'x at 333-34. BDT Instead brought a breach of implied contract claim against Lexmark, which the district court rejected. 274 F. Supp. 2d at 886. Here, BPS contends that the NDA protected its trade secrets, and it brought a breach of contract claim against Inashco based on the NDA. Throughout this case, the parties have disputed, and continue to dispute, the meaning of the NDA and the exception in Section 4(d). Accordingly, it cannot be said that, as a matter of law, Inashco had a "clear and reasonable understanding" that it was free to use all BPS's information as the district court found in *BDT Products*. *Id*. at 894 ("Because it is undisputed that the parties repeatedly entered into confidentiality agreements that expressly and unambiguously disclaimed any restrictions on Lexmark's use of information provided by BDT, it is axiomatic that no express or implied duty restricting Lexmark's use of such information can be found here.").

Finally, Inashco is only now raising the argument that there was no confidential relationship between the parties. (Doc. No. 135, PageID# 5469.) In its Motion for Summary Judgment, Inashco argued that (1) the NDA means that "BPS cannot legally claim" that its information is protected as a trade secret, (2) BPS publicly disclosed its alleged trade secret, and (3) "there is no evidence of Inashco misappropriating [BPS's] alleged 'umbrella' trade secret." (Doc. No. 93, PageID# 2407-13.) Absent is any contention that the parties were not in a confidential relationship. The Court has already rejected BPS's attempt to raise a new legal argument in its Motion for Reconsideration. Whatever

8

merits Inashco's new argument may have, see *Novus Grp., LLC v. Prudential Fin., Inc.*, 74 F.4th 424, 428 (6th Cir. 2023), the Court likewise rejects Inashco's attempt to raise a new argument at this stage.[3]

Accordingly, the Court denies Inashco's motion for reconsideration.

## II.     Conclusion

For the foregoing reasons, the Court DENIES both parties' Motions for Reconsideration. (Doc. Nos. 125, 126.)

**IT IS SO ORDERED.**

Dated: February 1, 2024                             *s/ Pamela A. Barker*
                                                    PAMELA A. BARKER
                                                    UNITED STATES DISTRICT JUDGE

---

[3] The Court notes that its decision denying Inashco's Motion for Summary Judgment does not bind the Court if Inashco were later to move for judgment as a matter of law under Federal Rule of Civil Procedure 50.  See *Wells v. O'Malley*, 106 F. App'x 319, 322-23 (6th Cir. 2004).

9