IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **BEST PROCESS SOLUTIONS, INC.,** | Case No.: 1:21-cv-00662 |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **BLUE PHOENIX INASHCO USA, INC.,** | |
| **Defendant.** | **MEMORANDUM OPINION & ORDER** |

Before the Court is Defendant Blue Phoenix Inashco USA, Inc.'s ("Inashco") Petition for Attorney's Fees filed on November 21, 2023.  (Doc. No. 120.)  On December 5, 2023, Plaintiff Best Process Solutions, Inc. ("BPS") filed an Opposition (Doc. No. 122), to which, on December 12, 2023, Inashco filed a Reply.  (Doc. No. 124.)

For the following reasons, the Court GRANTS IN PART and DENIES IN PART Inashco's Petition and awards it $43,018.00 in attorney's fees.

**I.      Relevant Background and Parties' Arguments**

On November 7, 2023, the Court granted in part and denied in part Inashco's Motion for Sanctions for Violation of the Court's Protective Order. (Doc. No. 117.)  The Court concluded that BPS and its president, Timothy Conway ("Mr. Conway"), violated the Court's Protective Order by using confidential information derived from their inspection of Inashco's facilities to prosecute a patent application.  (*Id*. at PageID# 5198.)  The Court sanctioned BPS by prohibiting it from using the subject patent in this case and by awarding Inashco the reasonable attorney's fees it incurred in

filing and prosecuting its Motion for Sanctions.[1] (*Id*. at PageID# 5199-200.) The Court ordered Inashco to file a petition for attorney's fees within fourteen days of the Court's Memorandum Opinion and Order. (*Id*. at PageID# 5201.) The deadline for BPS to file any opposition was seven days after Inashco filed its petition. (*Id*.) The Court did not set a deadline for Inashco to file a reply.

Inashco timely filed its Petition for Attorney's Fees. (Doc. No. 120.) In it, Inashco seeks a total of $105,447.50 in attorney's fees.[2] (*Id*. at PageID# 5216.) Inashco asserts that three of its counsel—Paul Keller ("Mr. Keller"), Michele Wang ("Ms. Wang"), and Stephen Funk ("Mr. Funk")—spent a total of 106.9 hours related to BPS's and Mr. Conway's violation of the Protective Order. (*Id*.) Mr. Keller and Ms. Wang work for Crowell & Moring LLP ("Crowell") in its New York City office. (*Id*. at PageID# 5225.) Mr. Keller has over 25 years of intellectual property litigation experience and his hourly rate is $1,200. (*Id*. at PageID# 5225-26.) Ms. Wang has over 10 years of intellectual property litigation experience and her hourly rate is $940. (*Id*.) Mr. Funk works for Roetzel & Andress, LPA ("Roetzel") in Akron, Ohio and has over 30 years of litigation experience. His hourly rate is $465. (*Id*. at PageID# 5228.)

On December 5, 2023, BPS filed an Opposition to Inashco's Petition for Attorney's Fees. (Doc. No. 122.) BPS opposes Inashco's Petition for four reasons. First, BPS argues that Mr. Keller's and Ms. Wang's hourly rates are "exorbitant," and the Court should instead apply the "prevailing market rates in the Northern District of Ohio," which would amount to an hourly rate of $465 for Mr. Keller (equal to Mr. Funk's rate) and $365 for Ms. Wang. (*Id*. at PageID# 5319-23.) Second, BPS

---

[1] The Court denied Inashco's request that the Court sanction BPS by enjoining it from *ever* enforcing the subject patent against Inashco. (Doc. No. 117, PageID# 5199.)
[2] Inashco attached to its petition a declaration from Mr. Keller (Doc. No. 120-1), biographies for Mr. Keller, Ms. Wang, and Mr. Funk (Doc. Nos. 120-2, 120-9), information about the Crowell and Roetzel law firms (Doc. Nos. 120-3, 120-10), time records for all attorneys involved (Doc. Nos. 120-4, 120-5, 120-11), and excerpts from market surveys. (Doc. Nos. 120-6, 120-7, 120-12).

contends that Inashco's Petition for Attorney's Fees did not require any specialized training and the hourly rate for all attorneys that worked on the fee petition should be $365. (*Id*. at PageID# 5324.) Third, BPS asks that the Court disregard nine of Mr. Keller's time entries totaling 14.5 hours of work because they are "block billed." (*Id*. at PageID# 5325-26.) Fourth, BPS argues that Inashco was only 50% successful in its Motion for Sanctions, and, therefore, the Court should reduce its total attorney's fees award by 50%. (*Id*. at PageID# 5327-28.) Finally, BPS maintains that since the Court did not set a deadline for Inashco to file a reply, the Court should reject Inashco's reply and decline to award Inashco any fees for preparing it. (*Id*. at PageID# 5328-29.) In sum, BPS argues that the Court should deny in part Inashco's Petition for Attorney's Fees and award it, at most, $22,390.50. (*Id*. at PageID# 5328.)

On December 12, 2023, Inashco filed a Reply in support of its Petition for Attorney's Fees. (Doc. No. 124.) Inashco again argues that hiring out-of-town intellectual property specialists was reasonable. (*Id*. at PageID# 5387.) Inashco further argues that it was 100% successful on the merits of its Motion for Sanctions, and, therefore, it should receive 100% of its requested fees. (*Id*. at PageID# 5394-95.) It also contends that Mr. Keller's disputed 14.5 hours are not "lumped" together, and it is easy to determine the time he spent on each task. (*Id*. at PageID# 5396.) Finally, Inashco seeks an additional $30,550.00 in attorney's fees for the day it filed its Petition ($2,256.00) and for preparing its Reply ($28,294.00), amounting to a new total request of $135,997.50. (*Id*. at PageID# 5397-99.)

II.     **Law and Analysis**

District courts calculate reasonable attorney's fees using the lodestar method. *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016). Its calculation "turns on two inputs." *Betancourt v. Indian Hills Plaza Ltd. Liab. Co.*, 87 F.4th 828, 831 (6th Cir. 2023). "The first is the

3

number of hours worked, which equates to those hours the prevailing attorneys 'reasonably expended.'" *Id*. (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986)). "The second is a reasonable hourly rate, which derives from the 'prevailing market rates' in the relevant community." *Id*. (quoting *City of Riverside*, 477 U.S. at 568). "Multiplying the two metrics together—hours x hourly rate—creates the lodestar amount." *Id*.

A district court may then adjust the lodestar amount based on "relevant considerations peculiar to the subject litigation." *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). Those considerations include:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The "most critical factor" governing the reasonableness of a fee award is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Where a plaintiff obtains excellent results, her "attorney should recover a fully compensatory fee." *Id*. "[N]o one factor," however, "is a substitute for" the lodestar method. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989).

When awarding attorney's fees, a district court should provide "a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437. "The length of that explanation will likely turn on the case's complexity and duration." *Echols v. Express Auto, Inc.*, 857 F. App'x 224, 227 (6th Cir. 2021). But in all cases, the court "should state with some particularity which of the claimed hours the court is rejecting, which it is accepting, and why." *U.S. Structures, Inc. v. J.P. Structures,*

4

*Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997). When the district court has made a particularized assessment of the award, "[the Sixth Circuit] afford[s] it 'substantial deference.'" *Betancourt*, 87 F.4th at 831 (quoting *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013)).

A. **Hourly Rates and Out-of-Town Specialists**

To calculate a reasonable hourly rate, courts "should initially assess the 'prevailing market rate in the relevant community.'" *Adcock-Ladd*, 227 F.3d at 350 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The general rule is that the "relevant community" is the legal community within the district court's territorial jurisdiction. *Id*. In *Adcock-Ladd*, the Sixth Circuit explained that:

> [W]hen a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit, thereby necessitating litigation by that lawyer primarily in the alien locale of the court in which the case is pending, the court should deem the "relevant community" for fee purposes to constitute the legal community within that court's territorial jurisdiction; thus the "prevailing market rate" is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record, rather than foreign counsel's typical charge for work performed within a geographical area wherein he maintains his office and/or normally practices, at least where the lawyer's reasonable "home" rate exceeds the reasonable "local" charge.

227 F.3d at 350. Courts "depart from this general rule where a 'good-faith effort' fails to identify local counsel, competent to handle the proceedings." *United States ex rel. Trakhter v. Provider Servs., Inc.*, 2019 U.S. Dist. LEXIS 96718 at *6 (S.D. Ohio June 10, 2019) (quoting *Sigley v. Kuhn*, 2000 U.S. App. LEXIS 1465 at *19 (6th Cir. Jan. 31, 2000)). This exception is called the out-of-town specialist rule. *See Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995).

The out-of-town specialist rule requires that a district court make two determinations. *Northeast Ohio Coalition*, 831 F.3d at 716. First, it must determine "(1) whether hiring the out-of-town specialist was reasonable in the first instance." *Id*. (quoting *Hadix*, 532 F.3d at 535). And second, it must determine "(2) whether the rates sought by the out-of-town specialist are reasonable

5

for an attorney of his or her degree of skill, experience, and reputation." *Id*. "A corollary of [the out-of-town specialist] rule is that judges may question the reasonableness of an out-of-town attorney's billing rate if there is reason to believe that competent counsel was readily available locally at a lower charge or rate." *Hadix*, 65 F.3d at 535. The party seeking out-of-town rates thus bears "the initial burden of showing that it was *necessary* to resort to an out-of-town specialist." *Id*. (emphasis added). To support a claim of necessity, "the record should contain evidence that counsel made an 'attempt to investigate the availability of competent counsel in the local market.'" *Harkless v. Husted*, 2011 U.S. Dist. LEXIS 62158 at *46 (N.D. Ohio Mar. 31, 2011), *R&R accepted as modified sub nom. Harkless v. Brunner*, 2011 U.S. Dist. LEXIS 57801 at *12 (N.D. Ohio May 31, 2011) (quoting *Hadix*, 65 F.3d at 535).

Inashco argues that it was reasonable to hire Mr. Keller and Ms. Wang—out-of-town specialists—because they "specialize in intellectual property litigation, and in particular patent and trade secret matters." (Doc. No. 120, PageID# 5225.) Inashco further argues that Mr. Keller's and Ms. Wang's "patent law expertise was required" to address BPS's and Mr. Conway's violation of the Protective Order. (*Id*.) What is missing from Inashco's Petition, however, is any evidence that Inashco or its counsel "attempt[ed] to investigate the availability of competent counsel" in the Northern District of Ohio. *Hadix*, 65 F.3d at 535. This is fatal to Inashco's petition for out-of-town rates. *See id*. (denying out-of-town rates because "[t]he record [was] devoid of any suggestion that local counsel made any attempt to investigate the availability of competent counsel in the local market"); *see also Asamoah v. Amazon.com Servs.*, 2023 U.S. Dist. LEXIS 143041 at *6 (S.D. Ohio Aug. 15, 2023) (denying out-of-town rate where there was "nothing in the record showing that Amazon made any attempt, good faith or otherwise, to investigate the availability of competent counsel in the local market"); *United States ex rel. Trakhter*, 2019 U.S. Dist. LEXIS 96718 at *7

6

(denying "national" rates because plaintiff did not show that a "good-faith effort failed to identify local counsel"); *Harkless*, 2011 U.S. Dist. LEXIS 62158 at *48 (R&R to deny out-of-town rates because moving parties did not "present[] any evidence that they actually tried to obtain representation by Ohio lawyers and were refused"). Accordingly, the Court denies Inashco's request to award Mr. Keller's and Ms. Wang's higher out-of-town hourly rates.

Since their out-of-town hourly rates are unavailable, the Court must determine what the "prevailing market rate" would be for Mr. Keller and Ms. Wang in the Northern District of Ohio. *See Adcock-Ladd*, 227 F.3d at 350. On this question, the parties are largely in agreement. Inashco contends that Mr. Funk's hourly rate of $465 is reasonable considering his experience and the data in the Ohio State Bar Association's study, "The Economics of Law Practice in Ohio in 2019" ("OSBA survey")[3]. (Doc. No. 120, PageID# 5228.) BPS concurs that Mr. Funk's rate is reasonable and asks that the Court apply the same rate to Mr. Keller and Ms. Wang, though adjusted downward for Ms. Wang due to her lesser experience. (Doc. No. 122, PageID# 5323-24.)

The Court concludes that $465 is a reasonable hourly rate for both Mr. Funk and Mr. Keller. Per the OSBA survey, it is between the 75th and 95th percentiles for intellectual property attorneys, attorneys in general in downtown Cleveland, and attorneys with more than 16 years in practice. (Doc. No. 120-12, PageID# 5314-15.) Moreover, it is above the median for attorneys at firms with more than 50 attorneys. (*Id*.) Even when accounting for inflation, $465 is more than the median hourly rate for each of these categories.[4]

---

[3] Inashco attached excerpts from the OSBA survey to its Petition. (Doc. No. 120-12.)
[4] *See* https://bls.gov/data/inflation_calculator.htm. Specifically, using January 2019 and January 2024 as the relevant dates, the inflation-adjusted median hourly rate for intellectual property attorneys is $373.31; the inflation-adjusted median hourly rate for attorneys in downtown Cleveland is $383.51; the inflation-adjusted median hourly rate for attorneys with more than 16 years in practice is $306.32; and the inflation-adjusted median hourly rate for attorneys at firms with more than 50 attorneys is $428.85.

7

Further, the Court concludes that $365 is a reasonable hourly rate for Ms. Wang. As BPS explained in its Opposition, Ms. Wang's hourly rate is 78% of Mr. Keller's, and $365 is 78% of Mr. Keller's adjusted hourly rate of $465. (Doc. No. 122, PageID# 5323-24.) And per the OSBA survey, this figure is within $10 of the inflation-adjusted median hourly rate for intellectual property attorneys and approximately $70 more than the inflation-adjusted median hourly rate for attorneys with 10 or more years of experience.

BPS also argues that the Court should reduce the hourly rate to $365 for the work that all Inashco's attorneys did on Inashco's Petition for Attorney's Fees because the work was "straightforward and routine." (*Id*. at PageID# 5324.) BPS cites no authority for such a by-task reduction in an attorney's hourly rate. And attorneys generally can recover fees incurred in litigating attorney's fees—what are termed "fees for fees." *See Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986), *abrogated on other grounds by Northeast Ohio Coalition*, 831 F.3d 686. Therefore, the Court rejects this argument.

In sum, the Court concludes that a reasonable hourly rate for Mr. Keller and Mr. Funk is $465 and a reasonable hourly rate for Ms. Wang is $365.

**B.     Hours Worked**

The only dispute between the parties over the hours worked variable of the lodestar calculation concerns 14.5 hours of Mr. Keller's time that BPS argues he "block billed." (Doc. No. 122, PageID# 5324.) Each of these entries contains multiple tasks, only a portion of which were related to BPS's and Mr. Conway's violation of the Protective Order. In its Reply, Inashco explains as follows:

> For each time entry, the original number of hours was divided by the number of tasks stated in the narrative, resulting in a number of hours per task. Then that number of hours per task was multiplied by the number of tasks in the narrative that were related to addressing BPS's and Mr. Conway's violation of the PO. The resulting number of

8

hours (which Inashco rounded down to the nearest tenth of an hour as needed) is the reduced number of hours Inashco used to calculate fees relevant to the Fee Petition.

(Doc. No. 124, PageID# 5395.) "[B]lock billing is not per se prohibited." *Howe v. City of Akron*, 705 F. App'x 376, 383 (6th Cir. 2017). So long as "the description of the work is adequate," block billing is permissible. *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 899 (6th Cir. 2020). Here, Mr. Keller's time entries adequately describe the work he performed, and his methodology for subtracting the time spent on unrelated tasks is reasonable.

Accordingly, the Court declines to reduce Mr. Keller's total hours by 14.5 hours for block billing. See *Northeast Ohio Coalition*, 831 F.3d at 705 n.7 (rejecting a similar complaint about block billing).

C.  **Success Rate**

BPS next argues that the Court should reduce the lodestar amount by 50% because Inashco was successful "only on one of its two requests for relief" in its Motion for Sanctions. (Doc. No. 122, PageID# 5326.)

As noted above, "the most critical factor in determining the reasonableness of a fee award, is the degree of success obtained." *Children v. Sec'y of Ky. Cabinet for Health*, 2024 U.S. App. LEXIS 2614 at *5 (6th Cir. Feb. 5, 2024) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) (internal quotation marks omitted). So, if a party "obtains 'limited success, the district court should award only that amount of fees that is reasonable in relation to the success obtained.'" *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005) (quoting *Hensley*, 461 U.S. at 437). Even so, "a reduction in attorney's fees" for this reason "is to be applied only in rare and exceptional cases where specific evidence in the record requires it." *Id*.

9

The Sixth Circuit has rejected a very similar argument to the one BPS now makes. In *Thurman v. Yellow Freight Sys.*, 90 F.3d 1160 (6th Cir. 1996), the Sixth Circuit held that a district court "should not reduce attorney fees based on a simple ratio of successful claims to claims raised." *Id*. at 1169. While that case dealt with claims, in *Hescott v. City of Saginaw*, 757 F.3d 518 (6th Cir. 2014), the Sixth Circuit extended this reasoning to requests for relief, holding that "a plaintiff's failure to win punitive damages does not constitute special circumstances warranting the denial of attorneys' fees either." *Id*. at 526.

So too here. Inashco was entirely successful on the merits of its Motion for Sanctions. And Inashco received two of its three requests for relief (not one of two as BPS asserts). The fact that the Court did not award Inashco the overbroad injunction it sought is not a "special circumstance" that warrants reducing Inashco's attorney's fees by 50%.

### D. "Fees for Fees" Incurred in the Reply

At the end of its Opposition, BPS asserts that "[a]ny reply brief [that Inashco files] is outside the scope of the Court's [Memorandum Opinion and Order granting in part and denying in part Inashco's Motion for Sanctions] and the Court should not only reject any such filing but also decline to award any fees related thereto." (Doc. No. 122, PageID# 5329.)

In its Memorandum Opinion and Order, the Court set a deadline for BPS to file an Opposition to Inashco's Petition for Attorney's Fees, though it did not set a deadline for Inashco to file a reply. But the Court's Order did not expressly prohibit Inashco from filing a reply either. Local Rule 7.1 provides, in relevant part, that "[u]nless otherwise ordered by the Judicial Officer, the moving party may serve and file a reply memorandum . . . in support of any non-dispositive motion within seven (7) days after service of the memorandum in opposition." N.D. Ohio Civ. R. 7.1(e). Since the Court

did not order otherwise, Inashco was permitted to file its Reply.  The Court has therefore considered the arguments Inashco made therein in determining its attorney's fees award.

Nonetheless, the Court declines to award Inashco the additional attorney's fees it incurred to prepare and file its Reply.  First, a reply memorandum is optional—as the Local Rule says, "the moving party *may* serve and file a reply memorandum."  N.D. Ohio Civ. R. 7.1(e) (emphasis added).  Inashco thus did not need to file its Reply and incur the additional fees to prepare it.  At the same time, the Court set a deadline for BPS to file an Opposition, and, per the Local Rule, a party "opposing a motion *must* serve and file a memorandum in opposition."  N.D. Ohio Civ. R. 7.1(d) (emphasis added).  Inashco attempted to dissuade BPS from opposing its Petition by writing that "[s]hould BPS file an Opposition to this Fee Petition, Inashco respectfully requests that the Court award Inashco its attorneys' fees incurred in preparing a Reply in support."  (Doc. No. 120, PageID# 5229.)  But BPS had a right and an obligation to file an opposition if it disagreed with Inashco's Petition.  And since one of BPS's arguments had merit—namely, its objection to Inashco's out-of-town rates—BPS was correct to have filed its Opposition.  One of the purposes of a civil contempt sanction is to "compensate the complainant for losses sustained."  *Elec. Workers Pension Tr. Fund of Local Union #58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003).  To further sanction BPS for raising a meritorious argument would not serve this purpose.

Second, and more importantly, "one must remember that an award of attorney's fees and expenses in a contempt proceeding is an equitable remedy.  The award must be fair to both sides considering all the circumstances of the case."  *Cernelle v. Graminex, LLC*, 539 F. Supp. 3d 728, 740 (E.D. Mich. 2021), *aff'd*, 2022 U.S. App. LEXIS 19549 (6th Cir. July 14, 2022).  And while an award of attorney's fees is an "appropriate" remedy "in situations where court orders have been violated," it is not a required one.  *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 634 (6th Cir. 2000).  That

is because a court can achieve a civil contempt sanction's second purpose—"to coerce the party into compliance," *Electrical Workers*, 340 F.3d at 379—through more than just an award of attorney's fees.  Here, the Court has already granted Inashco one of the injunctions it sought in its Motion for Sanctions.  (Doc. No. 117, PageID# 5199.)  An additional attorney's fees award of $28,294.00, beyond the $43,018.00 the Court is now awarding Inashco, would be unfair to BPS and unnecessary to coerce it into compliance with the Protective Order.

Accordingly, the Court declines to award Inashco the additional attorney's fees it incurred for its Reply.

### III. Conclusion

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Inashco's Petition for Attorney's Fees.  (Doc. No. 120.)  Specifically, the Court awards Inashco $43,018.00 in attorney's fees, as follows:

| Tasks | Attorney | Hours | Rate | Cost |
|---|---|---|---|---|
| Up through briefing Inashco's Motion for Sanctions (July 11, 2023, through September 8, 2023) | Keller | 25 | $465.00 | $11,625.00 |
| | Wang | 53.2 | $365.00 | $19,418.00 |
| | Funk | 1.5 | $465.00 | $697.50 |
| Fee petition (November 7, 2023, through November 21, 2023) | Keller | 2.3 | $465.00 | $1,069.50 |
| | Wang | 22 | $365.00 | $8,030.00 |
| | Funk | 2.8 | $465.00 | $1,302.00 |
| Fee petition (November 21, 2023) | Wang | 2.4 | $365.00 | $876.00 |
| **Total:** | | | | **$43,018.00** |

**IT IS SO ORDERED.**

Dated: March 15, 2024  *s/ Pamela A. Barker*
PAMELA A. BARKER
UNITED STATES DISTRICT JUDGE